**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| MARY HOLMES, L.V., and | ) | |
| EMPOWER MISSOURI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-04026-MDH |
| | ) | |
| ROBERT KNODELL, in his official | ) | |
| Capacity as Acting Director of the | ) | |
| Missouri Department of Social Services, | ) | |
| | ) | |
| Defendant. | ) | |

## SUGGESTIONS IN OPPOSITION
## TO MOTION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 1

PRELIMINARY STATEMENT ......................................................................................... 5

I.    BACKGROUND ........................................................................................................ 5

II.   INJUNCTION STANDARD .................................................................................. 10

III.  ARGUMENT ........................................................................................................... 11

A.    Plaintiffs' requested relief is inconsistent with the purpose of a temporary restraining order. ............................................................................................................ 11

B.    Plaintiffs seek mandatory injunctive relief contrary to the purposes of an early-stage temporary restraining order, and that request is subject to a higher standard of review. ......................................................................................................................... 13

C.    Plaintiffs cannot show a substantial likelihood of success on the merits. .......... 15

a.    Plaintiff is unlikely to succeed on their SNAP Act claim, as the DSS is complaint with the SNAP Act. ................................................................................... 15

b.    Plaintiff Empower Missouri lacks standing to bring this suit and move for any form of injunctive relief on behalf of other parties. .................................................... 17

c.    As to Count III, Plaintiffs fail to state a claim when they fail to allege a cognizable deprivation of a right. ................................................................................ 18

d.    As to Counts IV, Plaintiffs fail to state a claim that Acting Director Knodell has discriminated against the Plaintiffs on the basis of their disability. ......................... 19

D.    There is no threat of irreparable harm to Plaintiffs. ............................................. 20

a.    L.V. has been approved for benefits and, thus, her claims are moot and there is no threat of irreparable harm. ..................................................................................... 20

b.    Administrative remedies were available from the moment the denials were issued, so Holmes did not suffer an irreparable harm. .............................................. 21

E.    A temporary restraining order is not in the public's interest. ............................. 22

F.    Balance of harms between Plaintiffs and DSS favors DSS. ............................... 22

CERTIFICATE OF SERVICE ...................................................................................... 24

Case 2:22-cv-04026-MDH   Document 19   Filed 03/07/22   Page 2 of 25

# TABLE OF AUTHORITIES

Cases

*1-800-411-Pain Referral Service, LLC v. Otto,*
    744 F.3d 1045 (8th Cir. 2014) ............................................................... 23

*Already, LLC v. Nike, Inc.,*
    568 U.S. 85 (2013) .............................................................................. 20

*Arkansas ACORN Fair Hous., Inc. v. Greystone Dev. Co.,*
    160 F.3d 433 (8th Cir. 1998) ................................................................. 17

ARRM v. Piper,
    319 F. Supp. 3d 1156 (D. Minn. 2018) .................................................... 22

*Banks v. Block,*
    700 F.2d 292 (6th Cir. 1983) ................................................................. 18

*Belknap v. Leary,*
    427 F.2d 496 (2nd Cir. 1970) ................................................................ 12

*Comprehensive Health of Planned Parenthood Great Plains v. Williams,*
    263 F. Supp. 3d 729 (W.D. Mo. 2017) .................................................... 13

*Dataphase Sys., Inc., v. C L Sys., Inc.,*
    640 F.2d 109 (8th Cir. 1981) (en banc ............................................ 10, 11

*De Boise v. Taser Int'l, Inc.,*
    760 F.3d 892 (8th Cir. 2014) ................................................................. 19

*Devose v. Herrington,*
    42 F.3d 470 (8th Cir. 1994) ................................................................... 10

*Fambrough v. Uber Techs., Inc.,*
    No. 4:19-CV-0398-DGK, 2019 WL 2411442 (W.D. Mo. June 7, 2019) ...... 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ............................................................................ 17

*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) ................................................................. 13

Gen. Motors Corp. v. Harry Brown's LLC,
    563 F.3d 312 (8th Cir. 2009) ................................................................. 21

*Hillesheim v. Holiday Stationstores, Inc.,*
    903 F.3d 786 (8th Cir. 2018) ................................................................. 21

*Holman v. Block,*
    823 F.2d 56 (4th Cir. 1987) ................................................................... 19

*Hope v. Warden York Cty. Prison,*
    956 F.3d 156 (3d Cir. 2020) .................................................................. 11

*Innovation L. Lab v. Nielsen,*
    310 F. Supp. 3d 1150 (D. Or. 2018) ....................................................... 13

*ISG Tech., Inc. v. Secure Data Techs., Inc.,*
    No. 20-CV-03345-SRB, 2020 WL 7389746 (W.D. Mo. Dec. 16, 2020) ..... 13

*League of Women Voters of N. C. v. North Carolina,*
    769 F.3d 224 (4th Cir. 2014) ................................................................. 13

*Maryland v. King*,
 567 U.S. 1301 (2012) ................................................................... 23

*Mgmt. Registry, Inc. v. A.W. Companies, Inc.*,
 920 F.3d 1181 (8th Cir. 2019) ..................................................... 21

*Miljas v. Greg Cohen Promotions, LLC*,
 536 F. Supp. 3d 409 (S.D. Iowa 2021) ........................................ 14

*Minnesota Min. & Mfg. Co. v. Meter for & on Behalf of N. L. R. B.*,
 385 F.2d 265 (8th Cir. 1967) ....................................................... 12

*Nat'l Fed'n of Blind of Missouri v. Cross*,
 184 F.3d 973 (8th Cir. 1999) ................................................. 17, 18

*Noodles Dev., LP. v. Ninth Street Partners, LLP*,
 507 F.Supp.2d 1030 (E.D. Mo. 2007) ......................................... 11

*Phelps-Roper v. Nixon*,
 545 F.3d 685 (8th Cir. 2008) ....................................................... 22

*Phelps–Roper v. Nixon*,
 509 F.3d 480 (8th Cir. 2007) ....................................................... 11

*Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*,
 734 F.3d 406 (5th Cir. 2013) ....................................................... 23

*Prowse v. Payne*,
 984 F.3d 700 (8th Cir. 2021) ....................................................... 20

*Prudential Inc. Co. of Am. v. Inlay*,
 728 F.Supp.2d 1022 (N.D. Iowa 2010) ........................................ 11

*Richardson v. Texas Sec'y of State*,
 978 F.3d 220 (5th Cir. 2020) ....................................................... 18

*Robertson v. Las Animas Cty. Sheriff's Dep't*,
 500 F.3d 1185 (10th Cir. 2007) ................................................... 19

*Robinson v. Univ. of Akron Sch. of L.*,
 307 F.3d 409 (6th Cir. 2002) ....................................................... 20

*RoDa Drilling Co. v. Seigal*,
 552 F.3d 1203 (10th Cir. 2009) ................................................... 21

*Sessler v. City of Davenport*,
 990 F.3d 1150 (8th Cir. 2021) ..................................................... 11

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ................................................................. 17

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
 316 F.2d 804 (9th Cir. 1963) ....................................................... 11

*Watkins Inc. v. Lewis*,
 346 F.3d 841 (8th Cir. 2003) ....................................................... 10

*Windham v. Harris Cty., Texas*,
 875 F.3d 229 (5th Cir. 2017) ....................................................... 19

Statutes

7 U.S.C. § 2011 ................................................................................... 5
42 U.S.C.A. § 12132 .......................................................................... 19

Case 2:22-cv-04026-MDH   Document 19   Filed 03/07/22   Page 4 of 25

§ 205.960 RSMo ................................................................................................ 5
§ 208.080 RSMo .......................................................................................... 7, 21

Rules

Federal Rule of Civil Procedure 65 ........................................................................ 10

Regulations

7 C.F.R. § 273.2(e)(1) ...................................................................................... 15
7 C.F.R. § 273.2(e)(2) ...................................................................................... 15
7 C.F.R. § 273.2(e)(3) ...................................................................................... 15
7 CFR § 273.2 .................................................................................................. 6

## PRELIMINARY STATEMENT

Plaintiffs' Motion for Temporary Restraining Order seeks relief only for L.V. and Mary Holmes. L.V. and Ms. Holmes are not entitled to a temporary restraining order because such an order would alter the status quo. Instead of seeking prohibitory relief preventing Defendants *from* taking specific actions, under a plain reading of the actual relief requested it is clear that they are seeking what is effectively a mandatory injunction that is impermissible at this phase. Moreover, though Plaintiffs' motion does not seek relief for Empower Missouri, that organization is nevertheless a moving party. But Empower Missouri lacks standing to challenge the applicable laws. In any event, because Plaintiffs have failed to demonstrate they are entitled to a temporary restraining order under each *Dataphase* factor, this Court should deny their motion.

## I.     BACKGROUND[1]

In order to safeguard the health and well-being of the Nation's population by raising levels of nutrition amount low-income households, Congress authorized the supplemental nutrition assistance program ("SNAP"). 7 U.S.C. § 2011. Various state agencies across the country were tasked with implementing this program in their respective states. That responsibility was granted to the Family Support Division of the Missouri Department of Social Services. § 205.960 RSMo. Robert Knodell is currently the acting Director of DSS. Ex. A at ¶ 2.

---

[1] Defendants provide this background of the operation of the SNAP program for the Court's benefit. Defendants intend to introduce this information through witness testimony or other evidence during the hearing on Plaintiffs' motion.

DSS, by federal regulation, is required to process applications to determine the eligibility of individuals seeking SNAP assistance. *See* 7 CFR § 273.2. Part of this process of determining eligibility is an interview to be conducted with an employee of DSS. *Id*. When an applicant completes an application, they may submit the application in several ways: by applying online, by e-mailing a completed application to FSD, by mailing a physical application to FSD, by completing a physical application at a local office in any county where the applicant lives, or by faxing a completed application to FSD.[2] Ex. A at ¶ 4. Upon receipt of the application, the applicant may be required to complete an interview. Ex. A at ¶ 5.

DSS uses a predictive dialer to contact an applicant within three business days of the receipt of an application. Ex. A at ¶ 6. Once an applicant answers a call from the predictive dialer, the applicant is placed into a queue to speak with an interviewer. *Id*. These wait times of this queue are roughly 2 minutes. *Id*. If the applicant misses the call from the predictive dialer, the dialer will leave a message, and the applicant takes on the responsibility of scheduling and completing another interview. *Id*. This can be done by contacting the customer service phone line, by scheduling an interview online, or by visiting a local resource office.[3] Ex. A at ¶ 7. If an applicant seeks to complete their interview over the phone without making an appointment, the applicant enters a queue to wait for the next available interviewer.

---

[2] https://mydss.mo.gov/food-assistance/apply-for-snap

[3] https://mydss.mo.gov/media/pdf/snap-interviews-faqs

*Id.* These interviews can take between 30 minutes and an hour. Ex. A at ¶ 9. If the customer service center's phone technology calculates that there is not enough time left in the day to cycle the queue based on the number in the queue and the time it takes to conduct an interview, the applicant will hear an "overflow message" directing them to call another time. *Id.*

The interview must be completed within 30 days of the submission of the application, or the application will be denied. Ex. A at ¶ 5. A denial of an application, like any adverse action of FSD, is subject to administrative review. § 208.080 RSMo. Such appeal must be requested within ninety days from the date of the notice of action. *Id.*

The process described above is similar for a recertification of benefits, which near the end of a term of benefits and renews benefits for a new term. Ex. A at ¶ 9. However, there is also a mid-certification review (MCR), a process that occurs in the middle of a term of benefits. Ex. A at ¶ 11. This process evaluates if there has been a change in conditions, such as income or number of people in a household.[4] *Id.* On the 5th day of the month prior to the MCR month, which is the date the MCR must be complete, an MCR form is sent to the household with notice that the form is due by the end of the month. *Id.* If the form is not received by the end of the month preceding the last MCR month, another notice is mailed to the household. *Id.* If the form is not returned within ten days prior to the expiration of the MCR month, an adverse action

---

[4] https://dssmanuals.mo.gov/food-stamps/1140-000-00/1140-020-00/#:~:text=All%20households%20must%20have%20a,of%20certification%20(MCR%20Month).

notice is sent to the household, informing them that their case will be closed and that benefits will cease at the end of the month. *Id*. If the failure to return the form results in this adverse action, the household may either file an appeal as outlined above, or submit a new application for benefits. *Id*.  An interview is not required for an MCR. *Id*.

In compliance with the Americans with Disabilities Act, and in order to make sure their processes are accessible to all Missourians, DSS has instituted a non-discrimination policy. Ex. A at 12.  This policy is posed on the DSS website and posted in local resource offices across the state.[5] *Id*. The process for filing a discrimination complaint form is outlined in this policy, and is included with any adverse action notice. *Id*. The policy also includes information for making complaints with the DSS Office of Civil Rights either through phone call or through writing. *Id*.

Plaintiffs L.V. and Mary Holmes have filed suit alleging that DSS is denying access to SNAP benefits due to an overburdened customer service center. Doc. 1. DSS acknowledges that the customer service center receives a large volume of calls, and that the DSS has experienced a high turnover for the past few years. Ex. A at ¶ 13. This has led to high wait times to speak with interviewers over the phone. *Id*. In spite of that, DSS has acted in compliance with the SNAP Act, the ADA, and has made various avenues available to ensure that eligible participants receive their benefits. Ex. A at ¶¶ 4-12. Interviews may be conducted in various ways, and may be scheduled upon request to alleviate the need to call the customer service center.

---

[5] https://dss.mo.gov/files/missouri-nondiscrimination-policy-statement.htm

In the instances of the two particular plaintiffs here, L.V. has, since the filing of this suit, conducted an interview with FSD, *and she been determined eligible to receive their benefits*. Ex. A at ¶ 17. As detailed further below, L.V. thus has no immediate injury and cannot claim irreparable harm.

Holmes, on the other hand, was scheduled for a MCR at the end of 2021. Ex. A at ¶ 15. A notice was sent to the last address that the FSD had for Holmes, an address she had been using since 2013 and which is used on her newest application filed in Janaury. *Id*. Holmes never submitted the MCR form despite the various notices being sent to her. *Id*. Due to her failure to return the MCR form, Holmes's benefits ended. *Id*. Holmes did not seek an administrative review of this action, and instead elected to submit a new application. *Id*. Holmes submitted her application on January 11, 2022. Ex. A at ¶ 15. A predictive dialer call was made on January 12, 2022 at 10:21 AM, which Holmes did not answer. *Id*. A voicemail was left at that time. *Id*. Holmes tried later that day to contact the customer service center, and was held in queue for 1 hour and 9 minutes before disconnecting. *Id*. Holmes made more attempts on January 13, 2022. *Id*. Her first call in the morning resulted in a wait in the queue for two hours, the second call resulted in a wait on the queue for six minutes. *Id*. Her third call resulted in Holmes selecting the wrong option, and then her remaining four calls, all after 2:00 pm, resulted in Holmes receiving the overflow message. *Id*. She tried again on January 14, 2022, and was in the queue for one hour and thirty seven minutes. *Id*. She made another attempt on January 18, but failed to enter information necessary to continue the call. *Id*. Holmes made an attempt on January

27 at 4:30 pm and received the overflow message. *Id.* She made one final attempt on January 28, 2022, and was held in queue for fourteen minutes and twelve seconds. *Id.* DSS has no records to indicate that Holmes attempted to schedule an interview nor that she attempted to conduct an interview at a local resource center. Ex. A at ¶ 16. At the time of the new application, Holmes was not receiving benefits, as her previous case was closed. Ex. A at ¶ 14.

Plaintiffs bring this motion to compel DSS to grant L.V. and Holmes interviews. In spite of the high volumes of calls, DSS has complied with the law, and Plaintiffs' motion should be denied.

## II.    INJUNCTION STANDARD

Federal Rule of Civil Procedure 65 permits the issuance of a temporary restraining order and a preliminary injunction in limited situations. However, any form of preliminary injunctive relief is an "extraordinary remedy." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). Such interim relief is intended to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994) (per curiam) (citing *Dataphase Sys., Inc., v. C L Sys., Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en banc)).

In determining whether to grant a temporary restraining order, the Court considers (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; (3) the likelihood that the moving party will prevail on the merits; and (4) the

public interest. *Phelps–Roper v. Nixon,* 509 F.3d 480, 484 (8th Cir. 2007) (applying the *Dataphase* factors to request for a preliminary injunction); *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109 (8th Cir. 1981) (en banc); *Prudential Inc. Co. of Am. v. Inlay,* 728 F.Supp.2d 1022, 1028 (N.D. Iowa 2010) (noting applications for preliminary injunctions and temporary restraining orders are measured against the same factors). No single factor is determinative, they must be "balanced to determine whether they tilt towards or away" from granting the injunction. *Noodles Dev., LP. v. Ninth Street Partners, LLP,* 507 F.Supp.2d 1030, 1034 (E.D. Mo. 2007). A temporary restraining order "is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Fambrough v. Uber Techs., Inc.*, No. 4:19-CV-0398-DGK, 2019 WL 2411442, at *1 (W.D. Mo. June 7, 2019) (citations omitted); *see also Sessler v. City of Davenport*, 990 F.3d 1150, 1156-57 (8th Cir. 2021).

## III.   ARGUMENT

### A. **Plaintiffs' requested relief is inconsistent with the purpose of a temporary restraining order.**

The purpose of a TRO is to preserve the status quo. *Hope v. Warden York Cty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020). *See also Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963) ("It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits[…] This is particularly true where the relief afforded, rather than preserving the status quo,

completely changes it."). Plaintiffs attempt to use this motion to alter the status quo without the opportunity to properly investigate and develop the case by requesting relief that would effectively dispose of this case. Plaintiffs requested a TRO ordering the Acting Director Knodell to grant interviews to the Plaintiffs outside the allotted time for the interviews to be completed and to determine eligibility following these interviews. Doc 5.

The status quo would be greatly disturbed by granting the Plaintiffs their requested relief. "The status quo is the last uncontested status which preceded the pending controversy.'" *Minnesota Min. & Mfg. Co. v. Meter for & on Behalf of N. L. R. B.*, 385 F.2d 265, 273 (8th Cir. 1967). Setting aside L.V., whose claims have been rendered moot since the filing of this suit, which is discussed in more detail below, Holmes has based her suit on the mandatory interactions she has had with the customer service center. [*See* Doc. 1, *passim*]. However, the requirement for an interview was only *necessary* for Holmes's new application, not for her mid-certification review which only required her to return a form to the department in a timely manner. At the point that immediately precedes the pending controversy, Holmes was not entitled to SNAP benefits, as she had allowed her SNAP benefits to lapse before filing a new initial application. Plaintiffs' requested relief does not preserve this status quo, it seeks to alter it, which is beyond the purpose of a temporary restraining order, and more akin to a permanent injunction. *See Belknap v. Leary*, 427 F.2d 496, 498 (2nd Cir. 1970).

**B. Plaintiffs seek mandatory injunctive relief contrary to the purposes of an early-stage temporary restraining order, and that request is subject to a higher standard of review.**

Injunctive relief "may be characterized as being either prohibitory or mandatory." *League of Women Voters of N. C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014). "Whereas mandatory [temporary restraining orders and preliminary] injunctions alter the status quo [generally by requiring the non-movant to do something], prohibitory [ones] aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Id.* at 236 (cleaned up). "[T]he already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction.'" *Innovation L. Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156–57 (D. Or. 2018) (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (noting that the burden is "doubly demanding" for a mandatory injunction)).

Granting a mandatory injunction may be subject to later vacatur and reversible on appeal. *E.g.*, *Comprehensive Health of Planned Parenthood Great Plains v. Williams*, 263 F. Supp. 3d 729, 738 (W.D. Mo. 2017) (issuing an injunction stating that "a mandatory injunction is not needed" after noting that "that mandatory preliminary injunctions are not favored," which was later vacated by the Eighth Circuit). And issuing a mandatory injunction may be subject to a higher standard. *See ISG Tech., Inc. v. Secure Data Techs., Inc.*, No. 20-CV-03345-SRB, 2020 WL 7389746, at *7 (W.D. Mo. Dec. 16, 2020) (declining to issue a mandatory injunction requiring performance of an "affirmative action before a trial on the merits has

occurred, given that factual questions remain" and citing with approval cases that impose a higher standard for obtaining a mandatory injunction); *Miljas v. Greg Cohen Promotions, LLC*, 536 F. Supp. 3d 409, 426 n.6 (S.D. Iowa 2021) (implying that the likelihood of success on the merits factor is subject to more than proving a "fair chance" of success when the injunctive relief sought is for a mandatory injunction).

Here, Plaintiffs seek mandatory performance from State actors through a temporary restraining order. They seek a temporary restraining order "barring [Acting Director Knodell] from depriving Plaintiffs Holmes and L.V. of [SNAP] benefits to which they are entitled, *and requiring him* to provide Plaintiff with direct access to their required SNAP interviews within three working days, *allow* Plaintiffs time to submit such verification as may be necessary to complete the eligibility determination process, *and render* subsequent eligibility decisions documented on legally sufficient notices consistent with this process." [Doc. 5, p.1-2]. This is a classic form of a request for mandatory performance. They seek to prevent Acting Director Knodell from depriving Plaintiffs of benefits, which is just another way of saying that they want this Court to mandate that he provide those benefits to Plaintiffs. The rest of the request does not attempt to masquerade as a prohibitory or preventive measure—Plaintiffs specifically ask for relief "requiring [Knodell]" to provide access to SNAP interviews within a certain period of time, "allow" them time to submit verification forms, and "render" eligibility decisions. This relief is outside the purpose of a temporary *restraining* order, and this Court should deny granting specific-performance relief at this early stage. It would significantly disturb the status quo

and essentially grant Plaintiffs the substance of the relief they seek from their Complaint itself.

## C. **Plaintiffs cannot show a substantial likelihood of success on the merits.**

### a. **Plaintiff is unlikely to succeed on their SNAP Act claim, as the DSS is complaint with the SNAP Act.**

Plaintiffs' chief contention in their Motion for Temporary Restraining Order is that they are likely to succeed on the merits due to the alleged violations of the SNAP act. However, in regards to Holmes, DSS was compliant with the SNAP and it's implementing regulations. Per 7 C.F.R. § 273.2(e)(1), "Except for households certified for longer than 12 months, and except as provided in paragraph (e)(2) of this section, households must have a face-to-face interview with an eligibility worker at initial certification and at least once every 12 months thereafter." 7 C.F.R. § 273.2(e)(2) allows for this initial interview to occur on the phone, while 7 C.F.R. § 273.2(e)(3) requires that the interview be scheduled for any applicant who is not interviewed on the day they submit their application. "The State agency must notify each household that misses its interview appointment that it missed the scheduled interview and that the *household is responsible for rescheduling* a missed interview." 7 C.F.R. § 273.2(e)(3).

DSS satisfied these requirements through using alternatives to calling the customer service center and the use of the predictive dialer. The predictive dialer, which contacted Holmes and left a voicemail, satisfied that requirement that an interview be scheduled for any applicant not interviewed on the day they submit their

application. DSS gives the applicant several ways to conduct the interview, which include answering the call from the predictive dialer, calling the call center, going to an in-person center, or scheduling an interview, either on-line or in person.

In this case, Holmes submitted a new application on January 11, 2022. Holmes received a phone call from the predictive dialer at 10:21 am on January 12, 2022 which went to her voicemail after she did not answer. Holmes, over the course of the next several weeks, sat in the queue for a phone call five times, three times for over one hour (on January 12, 13, and 14) and two times for less than 15 minutes (January 13 and 28), a time shorter than it takes to complete the full interview, before disconnecting. The other attempts resulted in disconnections occurring later in the day which would trigger the overflow message (for example, there were four attempts after 2:00 PM on January 13, 2022 which triggered the overflow message), or the calls were disconnected due to incorrect options being selected in the menus or information not being input into a menu. At this time, DSS has found no record of other attempts to contact either a local office or attempts to schedule an interview online.

None of these facts show that DSS acted contrary to the SNAP Act. The options of scheduling and completing an interview were made available, the attempt to complete an interview was made within one day of the receipt of Holmes's application, and Holmes failed to schedule an interview within 30 days of her application using one of the many options made available to every applicant. Thus, Plaintiffs are unlikely to succeed on their claim that DSS violated the SNAP act, as DSS has acted in compliance with its terms.

### b. Plaintiff Empower Missouri lacks standing to bring this suit and move for any form of injunctive relief on behalf of other parties.

Empower Missouri does not have standing to be party to this suit. Article III of the constitution grants the Court power over cases and controversies. Article III standing requires a showing that a plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury in fact is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Empower Missouri cannot meet that standard.

Empower Missouri attempts to circumvent their lack of harm with vague factual allegations that fail to establish a link between the challenged practices and any harm. While an organization may establish associational standing "when there is a concrete and demonstrable injury to [the] organization's activities which drains its resources and is more than simply a setback to its abstract social interests." *Nat'l Fed'n of Blind of Missouri v. Cross*, 184 F.3d 973, 979–80 (8th Cir. 1999) A plaintiff will fail to establish standing when they presented "no facts to quantify the resources, if any, that were expended" or how those expenditures were traceable to a defendant's conduct. *Arkansas ACORN Fair Hous., Inc. v. Greystone Dev. Co.*, 160 F.3d 433, 434 (8th Cir. 1998). That has occurred here. Empower Missouri claims that its interests are adversely affected by the actions of the

Defendant, but when it attempts to support this conclusion, the organization claims that it *anticipates* spending $100,000 on *anti-hunger work*. Doc 1 at ¶ 240-241. This speculative future harm being focused on vague "anti-hunger work" is not sufficient to establish a "concrete and demonstrable injury to [the] organization's activities." *Cross,* 184 F.3d at 979.

Thus, Empower Missouri lacks standing, as the organization cannot establish an injury in fact or claim relief on behalf of Holmes or L.V.

### c. As to Count III, Plaintiffs fail to state a claim when they fail to allege a cognizable deprivation of a right.

Plaintiff, using section 1983, claims that DSS is depriving them of due process in the application process. "It is important, however, to identify a cognizable interest under the Due Process Clause", because the Court often dismisses "due process claims where plaintiffs fail to identify a cognizable interest and because "[t]he types of interests ... for Fourteenth Amendment purposes are not unlimited." *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 229 (5th Cir. 2020). In this case, Holmes fails to establish that she had a property interest in *future* benefits.

Holmes filed a new application, and at the time the application was filed, she was not entitled to benefits until she had been determined to be eligible. This occurred after she failed to submit her mid-certification review and her previous benefits ended. This case is similar to *Banks v. Block*, which found that a household has no protectable property interest in the continuous entitlement to food stamps beyond the expiration of its certification period." *Banks v. Block,* 700 F.2d 292, 297 (6th Cir. 1983);

*see also Holman v. Block*, 823 F.2d 56, 59 (4ᵗʰ Cir. 1987) (Finding that entitlement to food stamps beyond the expiration of the certification period to be an "unprotected unilateral expectation").

Plaintiff is seeking relief for an interest that is not cognizable, and thus, their 1983 claim must fail.

### d. As to Counts IV, Plaintiffs fail to state a claim that Acting Director Knodell has discriminated against the Plaintiffs on the basis of their disability.

Plaintiffs' lawsuit alleges violations of the ADA that are both unsupported and fails establish that the Plaintiffs have been denied benefits *on the basis* of their disability. To prevail on an ADA claim in this context, a plaintiff must demonstrate "that he is a qualified individual with a disability denied participation in, or the benefits of, the services, programs, or activities of a public entity because of his disability." *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 899 (8th Cir. 2014). *See also* 42 U.S.C.A. § 12132. "As the ADA does not require clairvoyance, the burden falls on the plaintiff 'to specifically identify the disability and resulting limitations,' and to request an accommodation in 'direct and specific' terms." *Windham v. Harris Cty., Texas*, 875 F.3d 229, 236–37 (5th Cir. 2017) (citations omitted). The exception to this requirement is if the need for an accommodation is *obvious. Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007).

Plaintiffs have failed to plead facts to establish that delays at the customer service center has a disparate impact on disabled applicants nor that Plaintiffs made DSS aware that they were disabled and in need of a reasonable accommodation.

19

Plaintiffs suggests that everyone is funneled to the customer service center without adequately pleading facts that establish that this alleged practice disproportionately affects disabled applicants. Instead, Plaintiff pleads conclusory statements without sufficient facts to support those conclusions. [See Doc. 1 at ¶¶ 144-153]. Plaintiffs have failed to plead facts that suggest the various disabilities the Plaintiffs contend with were *obvious* so as to be exempted from needed to specifically request an accommodation. Plaintiff even falls short of pleading an essential element of their claim: that any denial of benefit was *because* they were disabled. *Robinson v. Univ. of Akron Sch. of L.*, 307 F.3d 409, 413 (6th Cir. 2002). (Court found an ADA claim did not exist when Plaintiff made "no claim that he was excluded from these hearings because of his disability.").

Plaintiffs has failed to state a claim, as it failed to sufficient plead an ADA claim.

### D. There is no threat of irreparable harm to Plaintiffs.

#### a. L.V. has been approved for benefits and, thus, her claims are moot and there is no threat of irreparable harm.

As discussed above, L.V. received an interview for benefits on March 2, 2022 with FSD for SNAP benefits. L.V.'s successful interview with FSD ended with L.V. being found eligible to receive SNAP benefits. A case becomes moot, and is therefore no longer a case or controversy, "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Prowse v. Payne*, 984 F.3d 700, 702 (8th Cir. 2021) (*citing Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Generally, a claim is moot when "changed circumstances already provide the requested relief and eliminate the need for court action." *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018).

L.V. has received their requested relief, and has subsequently received the benefits they sought. Their claim is moot, and they are not at risk of irreparable harm.

### b. Administrative remedies were available from the moment the denials were issued, so Holmes did not suffer an irreparable harm.

Holmes brings this suit after failing to avail herself of adequate state law remedies, which is fatal to her position that her harm is irreparable. To receive a preliminary injunction, Holmes must establish that she has "no adequate remedy at law" because "its injuries [could not] be fully compensated through an award of damages." *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019) *citing* Gen. Motors Corp. v. Harry Brown's LLC, 563 F.3d 312, 318-19 (8th Cir. 2009). Holmes may not stand on purely speculative harm, but rather she must demonstrate that the harm is not speculative. *See RoDa Drilling Co. v. Seigal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

Holmes had an adequate state law remedy, and thus, is not subject to irreparable harm. At the time of filing, Holmes has not been determined to be eligible since she allowed her previous benefits to lapse by failing to return her mid-certification review. Plaintiff had the opportunity to request administrative relief to both the mid-certification review and the subsequent denial of her new application, neither of which she attempted. *See* § 208.080 RSMo. "When an adequate remedy

exists under state law, injunctive relief is not appropriate." ARRM v. Piper, 319 F. Supp. 3d 1156, 1163 (D. Minn. 2018).

As Holmes is not subject to irreparable harm, injunctive relief is unavailable at this time.

### E. **A temporary restraining order is not in the public's interest.**

It is in the public interest to protect rights, so "the determination of where the public interest lies is also dependent on the determination of the likelihood of success on the merits[.]" *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), overruled on other grounds by *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012). As discussed above, Plaintiffs are not likely to succeed on the merits of their claims. While the enforcement of laws passed by Congress is in the public interest, Plaintiffs have not demonstrated that Defendant has failed to comply with federal statutory mandates concerning the provisions of SNAP and the ADA at issue. As a result, injunctive relief is not available at this time.

### F. **Balance of harms between Plaintiffs and DSS favors DSS.**

Plaintiffs claim that the harm to them outweighs the potential harm to Defendant. In fact, Plaintiffs claim that Defendant would suffer no harm from a granting of Plaintiffs' requested temporary restraining order, but this is untrue. As stated above, Holmes has an adequate remedy at law. As do all claimants who are denied benefits under SNAP. Under Missouri law, there is a state administrative grievance procedure for those who are denied benefits. Rather than avail herself of

the administrative grievance procedure afforded under state law, Holmes seeks the extraordinary remedy of a temporary restraining order from this Court. Should the Court acquiesce, such an action would likely encourage other individuals to bypass the proper avenues for relief and unduly burden Defendant with a flood of litigation.

This is especially true here where Plaintiffs' requested relief concerns the interpretation and enforcement of state statutes; injunctive relief in this circumstance would cause per se irreparable harm against the State. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see also 1-800-411-Pain Referral Service, LLC v. Otto*, 744 F.3d 1045, 1053-54 (8th Cir. 2014) (holding that in the context of a preliminary injunction, courts apply "a more rigorous threshold showing than th[e] ordinary preliminary injunction test" when the injunction would impede state law); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.").

Moreover, Defendant does not deny that while there could *potentially be* harm to Ms. Holmes while this is case is pending in the form of delays to an eligibility determination, what Plaintiffs are essentially doing is asking this Court to rule in their favor to grant the critical relief sought in the Complaint without a trial or full hearing on the merits.

WHEREFORE, for the reasons stated, Defendant respectfully requests this Court enter an Order denying Plaintiffs' Motion for a Temporary Restraining Order and for such other relief the Court deems just and proper.

Respectfully submitted,

ERIC S. SCHMITT
Attorney General

/s/ Gerald M. Jackson
Gerald M. Jackson #66995MO
Assistant Attorney General
Post Office Box 861
St. Louis, Missouri 63188-0861
Telephone:  314-340-3420
Telefax:  573-751-5660
E-mail: gerald.jackson@ago.mo.gov

/s/ Amanda R. Langenheim
Amanda R. Langenheim, #69642
Assistant Attorney General
Fletcher Daniels State Office Building
615 E. 13th Street, Suite 401
Kansas City, MO 64106
P: (816) 889-5013 | F: (573) 751-5660
Email: amanda.langenheim@ago.mo.gov

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2022, I electronically filed the foregoing, along with corresponding exhibits, with the Clerk of the Court's ECF system, which sent notification to counsel of record for Plaintiffs.

/s/ Gerald M. Jackson
Gerald M. Jackson
Assistant Attorney General

24