UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

|  |  |
|---|---|
| MARY HOLMES, DENISE DAVIS, ANDREW DALLAS, and EMPOWER MISSOURI,<br><br>                           Plaintiffs,<br><br>              *-against-*<br><br>ROBERT KNODELL, in his official capacity as Director of the Missouri Department of Social Services,<br><br>                     Defendant. | Case No. 2:22-cv-04026-MDH<br><br>**PLAINTIFFS' REPORT** |

On May 9, 2024, this Court entered its Order on the parties' cross motions for summary judgment, ECF 161, finding Defendant's administration of SNAP in Missouri did not fulfill his obligations under federal law and violated the ADA. The Order required Plaintiffs to submit a report detailing the specific changes Plaintiffs contend are required to make Defendant's system lawful, compliant, and more effective. Accordingly, Plaintiffs submit the following report:

**A. Defendant must not deny SNAP applications for eligible individuals who have not been given a meaningful opportunity to complete their interviews.**

To comply with the SNAP Act and constitutional due process, the Defendant must make the following specific changes:

1. Assess Plaintiff Holmes's eligibility for benefits from the date of her January 10, 2022 application through March 20, 2022.

2. Assess Plaintiff Davis's eligibility for benefits from the date of her December 29, 2022 application through March 1, 2023.

1

3. Cease automatically denying applications[1] for failure to interview.

4. Develop a formal written policy confirming that DSS will not automatically deny applications based on a failure to interview and recognizing that a person has attempted to complete an interview if after filing a SNAP application they have called or navigated to Tier 3, visited a resource center, requested an interview via the online scheduler, or scheduled an interview appointment via any other available means.

5. Prior to issuing a denial for failure to interview, DSS must check agency records to determine if an attempt to interview has been made. Plaintiffs propose the following concrete changes to meet this requirement:

   a. On the twentieth day after the application filing date, consult phone records to ascertain whether the number listed on the application has called into Tier 3 since the application was submitted, or whether the applicant's Department Case Number or Social Security Number have been entered in response to Tier 3 IVR prompts;[2]

   b. On the twentieth day after the application filing date, consult individual client case files, Current, and other such records for any indication that the applicant attempt to be interviewed at a resource center since the application was submitted, or otherwise attempted to be interviewed; and

   c. On the twentieth day after the application filing date, consult the online appointment scheduler, resource center schedules, and any other appointment

---

[1] For the purpose of this filing, the term "application" refers to both initial SNAP applications and SNAP recertifications.
[2] Plaintiffs do not take a position on whether these record checks ought to be automated or conducted by DSS staff. Plaintiffs defer to Defendant on which method will be more practicable. However, Plaintiffs encourage Defendant to consider such functionalities in any future changes to DSS record-keeping and case management systems.

scheduling records to determine if the applicant has scheduled an appointment.

6. If the applicant has attempted to be interviewed, then DSS must undertake additional procedures to ensure that the applicant has a meaningful opportunity to complete the interview. Plaintiffs propose the following concrete changes to meet this requirement:

    a. On the twentieth day after the application filing date, if agency records show the applicant attempted to be interviewed but is not already scheduled for an interview appointment, DSS must schedule the applicant for a telephone interview. The scheduled date must be within the application's timeliness window.

    b. On the twentieth day, mail a notice regarding the date and time of the scheduled interview.

7. Immediately prior to denying an application for failure to interview, DSS must again investigate whether the applicant has attempted to obtain an interview pursuant to the above-mentioned steps in ¶ A(5). If DSS records show the applicant has attempted to obtain an interview after the 20th day from the date of their application and by the 30th day, DSS must undertake additional procedures to ensure that the applicant has a meaningful opportunity to complete the interview. Plaintiffs propose the following concrete changes to meet this requirement:

    a. On the thirtieth day after the application filing date, if agency records show the applicant attempted to be interviewed but is not already scheduled for an interview appointment, DSS must schedule the applicant for a telephone interview. The scheduled date must be as soon as practicable.

3

      b. On the thirtieth day, mail a notice regarding the date and time of the scheduled interview.

8. DSS must only issue denials for failure to interview after both (1) checking agency records for any attempt to interview using the procedures discussed in ¶¶ A(5) and (7), and (2) for applicants who attempted to interview, undertaking the additional procedures discussed in ¶¶ A(6)-(7).

9. Once the interview is completed, DSS must ensure the applicant is granted 10 additional days to submit any requested verifications.

10. In the event it is impossible for a scheduled interview to take place prior to the application processing deadline, DSS must not deny any application(s) for failure to interview when the applicant has an interview appointment scheduled, even if the appointment is after the application processing deadline. This includes appointments scheduled by the applicant and by DSS.

11. Pursuant to the ongoing referral process established by the parties at the Court's suggestion, DSS must continue to schedule interviews for specific dates and times, upon email request from Plaintiff's counsel, for the duration of the Court's jurisdiction. DSS must also schedule interviews for specific dates and times upon email request from any other Missouri legal services organization for the duration of the Court's jurisdiction. The referral process presently consists of the following steps, which the parties have handled amicably during this litigation:

      a. SNAP applicants who have made efforts to complete their interview but have been unable to do so contact Legal Services of Eastern Missouri (LSEM) for assistance.

4

b. LSEM emails DSS Legal Counsel Joshua Phillips requesting an interview and sharing the following identifying information: applicant's name, date of birth, phone number, and availability for a SNAP interview. LSEM is not obliged to include an authorized representative form with the interview request.

c. DSS works to promptly schedule interviews for applicants referred by LSEM.

d. DSS informs LSEM by email of the date and time a referred applicant has been scheduled for an interview.

e. LSEM informs the applicant who awaits DSS's call at the scheduled time.

f. DSS emails LSEM confirmation that the scheduled SNAP interview is completed.

g. Should a referred applicant need to alter their previously expressed availability for an interview, LSEM promptly informs DSS, who works to schedule an interview when the applicant is available.

**B. Defendant must ensure that all SNAP applicants have a meaningful opportunity to complete an interview.**

To comply with the SNAP Act and constitutional due process, the Defendant must make the following specific changes:

1. Employ staff sufficient to ensure that all SNAP applicants can meaningfully access an interview. Plaintiffs propose the following concrete changes and metrics to meet this requirement:

    a. Staff the call center with personnel sufficient to:

        i. Keep the Tier 3 monthly average speed to answer below fifteen minutes; and

5

<blockquote>

ii. Keep Tier 3 deflections to no greater than 5% of daily incoming calls with a goal of achieving zero deflections per month.

b. On a monthly basis, assess the number of call center staff needed to meet the above metrics,[3] and take all possible steps to assign an appropriate and sufficient number of staff to work in the call center and meet the above metrics.

c. Provide interview appointment slots (on the appointment scheduler) that precede the application processing deadline.

d. Develop a streamlined interview template for call center staff that asks only mandatory eligibility questions and clarifies uncertain information.

e. Update DSS's computer system to allow call center staff to skip questions if the information is unnecessary or precluded by other already-elicited information.

</blockquote>

2. Institute safeguards and additional procedures to ensure interview access even when the call center is unable to keep up with demand (for example, while relief in this litigation is being implemented, or during periods of staffing difficulty or higher than usual SNAP demand). Plaintiffs propose the following concrete changes to meet this requirement:

<blockquote>

a. Utilize the interview scheduling outlined in ¶¶ A(6)-(7).

b. Continue offering the interview scheduler to callers after they reach the Tier 3 inbound queue.

</blockquote>

---

[3] DSS has performed such an assessment in the past. *See* ECF 138-3 at 59:19-60:22, 92:25-93:9.

c. Offer the interview scheduler to callers when they are deflected or redirected from the Tier 3 queue.

d. Reinstitute a callback option, and offer said option to callers both upon being placed in the Tier 3 inbound queue and when deflected from the Tier 3 inbound queue.

3. Provide an in-person interview[4] to any individual who requests one. If the interview cannot be conducted at the time of the request, schedule the applicant for an interview appointment at a date and time both convenient to them and within 30 days of the date of their application. If the applicant consents, they may be scheduled for a telephone interview. If no interview appointment—in person if the applicant prefers, or telephonic if acceptable to the applicant—is available prior to the 30th day, Defendant must toll the processing deadline.

4. Update DSS's website, IVR menu, physical postings, and all other relevant communications channels regarding changes to resource center hours that are planned in advance. These updates must occur one week prior to implementation of the schedule change. If changes to resource center hours are planned within one week of implementation, then notice must be communicated as soon as practicable.

5. Update DSS's website, physical postings, and social media channels regarding changes in resource center hours not planned in advance (i.e., the only staff member at a minimally staffed resource center calls out of work). These updates must occur as soon as DSS is aware of the need for a schedule change.

---

[4] For the purposes of this document, an "in-person interview" is an interview conducted in a resource center or other location during which the applicant and DSS worker are physically present in the same room.

**C. Defendant must ensure that all Missouri residents are provided with an opportunity to apply for SNAP on the first day that they contact DSS.**

To comply with the SNAP Act, the Defendant must make the following specific changes:

1. Implement an option on the IVR phone tree that allows callers to request that a paper application be sent to the applicant via U.S. mail. This option can be automated (if possible) or staffed. If staffed, the queue must be separate from the Tier 1 or Tier 3 queues.

2. Paper applications requested on a day DSS is open must be mailed on the day of the request. Paper applications requested on a day DSS is closed must be mailed the following business day.

**D. Defendant must provide reasonable accommodations to Plaintiffs to enable them to access and maintain their eligibility for SNAP.**

To comply with the ADA, the Defendant must make the following specific changes:

1. Contact Plaintiffs' counsel within 10 business days to schedule appointments for the individual Plaintiffs. During these appointments, Defendant must engage in interactive assessments, as described below.

2. Ensure records are maintained regarding Plaintiffs' accommodation requests and assessments, as described below.

3. Once appropriate reasonable accommodations are approved for the individual Plaintiffs, ensure such accommodations are provided on an ongoing basis, without the need for Plaintiffs to make repeated requests.

8

**E. Defendant must notify SNAP applicants and recipients about the nondiscrimination requirements of Title II of the ADA, including the process by which they can seek a reasonable accommodation.**

To comply with the ADA, the Defendant, his agents, and his contractors must make the following specific changes:

1. Inform applicants, participants, and members of the public about the rights of individuals with disabilities under the ADA, in a manner that provides a meaningful and equal opportunity to participate in SNAP, including the entitlement to request and receive reasonable accommodations. Plaintiffs propose Defendant make the following concrete changes to meet this requirement:

    a. Make notice available to applicants and recipients at all interaction points, including during the application and recertification process. Such notice must be made available as appropriate, in person, by mail, email, over the phone, and on the Defendant's website and social media accounts.

    b. Display at all resource center waiting rooms, reception or lobby areas, or any other areas frequented by applicants and participants a large poster with the content described above.

    c. Provide the content of the notice described in ¶ E(1)(a) and the poster described in ¶ E(1)(b) in alternate formats upon request.

    d. Create a webpage dedicated to its ADA policy that that adheres to the Web Content Accessibility Guidelines (WCAG) 2.1 and all applicable successor standards,[5] and includes:

        i. The content of the notice described in ¶ E(1)(a);

---

[5] *See* https://www.w3.org/TR/WCAG21/

9

ii. Hyperlinks to all ADA-related forms, policies, posters, and notices; and

iii. A link to the email address described in ¶ F(1)(a)(iii).

2. Create new notice documents which include:

    a. The right and procedure to request a reasonable accommodation;

    b. The right to fully participate in and/or access SNAP benefits;

    c. The right to be free from discrimination by Defendant based on disability;

    d. The right and procedure to file a grievance or complaint challenging alleged violations of these rights; and

    e. Contact information for Defendant's ADA Coordinator or the person charged with ADA compliance.

**F. Defendant must ensure the process for applicants and recipients to request a reasonable accommodation that permits meaningful access to SNAP.**

To comply with the ADA, the Defendant must make the following specific changes:

1. Create a process that systematically and uniformly ensures that SNAP applicants and participants may request reasonable accommodations. This process should place the least burden possible on the applicant or participant. The process must include, at a minimum, the following requirements:

    a. Persons with a disability must be allowed to seek an accommodation at any time and in any manner, and at every point of contact in the eligibility process, beginning at the application stage. This includes any and all telephone contacts, in-person contacts, contacts via mail, and online contacts. Plaintiffs propose the following concrete changes to meet this requirement:

10

i. Implement an option in Defendant's IVR menu to connect directly with a DSS staff member and request a reasonable accommodation;

ii. Implement an option or trigger in DSSChat to allow SNAP applicants and participants to request a reasonable accommodation; and

iii. Implement a centralized email address to which individuals may submit requests for reasonable accommodations, or another effective mechanism for individuals to (1) submit a request for an accommodation and (2) receive confirmation the request has been submitted.

b. Defendant's staff must act affirmatively to facilitate reasonable accommodation requests. Plaintiffs propose the following concrete changes to meet this requirement:

i. Helping individuals make requests for reasonable accommodations if they need assistance. This includes, but is not limited to, reading any utilized reasonable accommodation request form to individuals and/or checking to make sure the person understands the content of the form.

ii. At application for or recertification of benefits, inquiring into whether applicants or participants are potentially disabled and whether they might need reasonable accommodations to access or retain benefits. Defendant's staff should inform individuals of the tasks required to apply for or recertify eligibility for the SNAP program, ask the individual if they will have difficulty or need assistance completing these tasks, and ask the individual to explain the reasons for this

11

difficulty or need for assistance (if any). If the individual expresses a difficulty or need for assistance that may be related to a disability, then Defendant's staff shall document their response and treat it as a request for a reasonable accommodation. If the individual indicates they do not wish to disclose a disability or discuss an accommodation, the worker shall not make further inquiries on this subject.

**G. Defendant must ensure the process through which DSS grants or denies reasonable accommodation requests permits meaningful access to SNAP.**

To comply with the ADA, the Defendant must make the following specific changes:

1. Create a written accommodation process that systematically and uniformly ensures that SNAP applicants and participants with a disability receive required reasonable accommodations. The process must:

   a. Place the least burden possible on the applicant or participant.

   b. Allow individuals to request accommodations verbally by telephone or in person, and/or through written requests made by U.S. mail, fax, email, or a hand-delivered document.

   c. Be expeditious, to avoid delaying the individual's ability to receive benefits. Most accommodations should be approved on the day they are requested. All other accommodation requests should be resolved within 5 business days.

   d. Once approved, reasonable accommodations must be provided on an ongoing basis, without the need for the individual to make repeated requests or provide continuing verification of disability.

e. Require DSS staff to act affirmatively to provide reasonable accommodations to persons with a disability, and to assist them with accessing and maintaining eligibility for SNAP benefits.

f. Require DSS's process for assessing requests for reasonable accommodations to include engaging with individuals in a collaborative, interactive process that applies a fact-specific, individualized analysis of their need for assistance, in order to effectively complete eligibility procedures. As part of this interactive process, staff must consider:

   i. First and foremost, the individual's preferred accommodation, if any;

   ii. The essential functions of the applicable program requirements;

   iii. How the individual's disability limits performance of those essential functions;

   iv. The accommodation options that could remove the barrier to meaningful participation in the application or recertification process;

   v. The effectiveness and feasibility of potential accommodations; and

   vi. The individual's preference between possible accommodations that are both effective and feasible.

g. Consider certain impairments that virtually always impose a substantial limitation on major life activities including, for example, deafness that substantially limits hearing, blindness that substantially limits seeing, or epilepsy that substantially limits neurological function. For these individuals, Defendant will make all reasonable efforts to identify the type of accommodation most suited to their circumstances, and not whether an accommodation will be provided.

13

h. In keeping with Defendant's current policy, any staff member must be able to approve a request for an accommodation, with the expectation that frontline staff will approve requests without assistance or approval whenever possible.

    i. When staff are not sure whether an accommodation should be approved, or when the applicant or recipient is not satisfied with the proposed accommodation, staff must consult with their supervisor.

    ii. The supervisor must assist the frontline worker and individual with options for accommodation.

    iii. If a supervisor is unsure whether an accommodation should be approved, they must refer the question to the ADA Coordinator or other person charged with ADA compliance.

    iv. This approval authority applies to both verbal requests made by telephone or in person, and written requests made by U.S. mail, fax, email, online chat platforms, or a hand-delivered document.

i. Only the ADA Coordinator or person otherwise responsible for ADA compliance of DSS will have the authority to deny a request for an accommodation. Such a denial may only occur when:

    i. The requested accommodation, if granted, would fundamentally alter the nature of Defendant's programs, benefits, and services under SNAP; or

    ii. After being given a reasonable opportunity and assistance, the individual fails or refuses to comply with a request of authorized DSS staff to provide appropriate documentation of disability, when the disability is not readily apparent.

14

j.  The denial of a reasonable accommodation request must be made in writing and/or in a format accessible to the applicant or recipient in a timely manner to provide proper notice that a determination has been made and the applicant/recipient has a right to grieve the determination.

k.  If the individual has requested or been identified as potentially needing an accommodation to comply with program requirements, then the deadline for compliance must be tolled while the accommodation is resolved, including a decision on any grievance or complaint regarding the request. Defendant must not take any adverse actions regarding the SNAP benefits of the applicant or participant while an accommodation request is under consideration.

l.  Applicants and participants with disabilities have the right to refuse the granting of reasonable accommodations. The refusal of an accommodation—that the individual initially requested or that the Defendant affirmatively offered—should have no effect on the delivery of benefits. Before taking any adverse action against an individual who has refused an accommodation, staff must re-offer the accommodation and inform the individual that an adverse action may be taken if they are unable to comply with a program requirement as a result of refusing the accommodation. Individuals who refuse accommodations after being consulted and offered the same should be asked to sign a statement acknowledging their refusal of the accommodation. Accommodations must be offered again on future occasions, and the acknowledgement must not constitute a waiver or release of any rights.

m. Include clear assignments of responsibility and timelines for all people/entities involved in implementation.

n. Include clear instructions for staff regarding the processes described above.

**H. Defendant must ensure that ADA grievance procedures are available to SNAP applicants and recipients.**

To comply with the ADA, the Defendant must make the following specific changes:

1. Defendant must provide applicants and participants an opportunity to submit a grievance or complaint to an impartial decisionmaker within DSS regarding any decision to deny a request for reasonable accommodations, or regarding any actions regarding discrimination on the basis of disability.

2. Defendant's staff must notify anyone who requests accommodations and is dissatisfied, or who believes he or she was treated unfairly because of a disability, about the immediate right to file a grievance or complaint directly, including the process to be utilized.

3. Defendant must develop a form for the filing of grievances or complaints, but not require individuals to use the form. Defendant must also accept and document grievances or complaints made orally and offer assistance to anyone seeking to fill out the grievance or complaint form.

**I. Defendant must ensure that adequate records are kept to ensure that SNAP applicants and recipients with disabilities receive accommodations required for meaningful access to SNAP.**

To comply with the ADA, Defendant must make the following specific changes:

1. All actions related to requests for accommodation must be recorded and documented in Defendant's case file systems, including the date and content of the request, the timeline for consideration, the date and content of the approval or denial, the date and

16

content of notice to the individual, and the date on which the accommodation was initially provided.

2. Accommodation request information must be accessible in individual case files. Recordkeeping must be sufficient to allow for accommodations to be provided on an ongoing basis for as long as the individual's need persists.

3. Defendant must be capable of generating a centralized report to document, on a monthly basis, the number of accommodation requests made and their resolution.

4. Defendant's staff must comply with all applicable confidentiality laws regarding disability-related information. Defendant's staff must inform other relevant DSS staff about an individual's need for an accommodation, so they can arrange for and/or provide accommodations. Defendant must share only the accommodations required, not the nature of the disability, with individuals providing client services who do not need to know the nature of the disability. Defendant must get the consent of the person with a disability before sharing information about that person's disability with contractors or other agencies. Defendant must ensure that persons acting as interpreters understand their obligation to maintain client confidentiality.

**J. Defendant must ensure that DSS staff are complying with policies and procedures required to ensure meaningful access to SNAP.**

To comply with the ADA, the Defendant must make the following specific changes:

1. On at least an annual basis, and upon hiring for new staff, Defendant must train all staff regarding DSS's ADA obligations, including, but not limited to:

   a. The rights of persons with disabilities under the ADA, including that people with disabilities have a right to and may need reasonable accommodations to:

      i. Access and maintain eligibility for SNAP,

17

ii.  Comply with SNAP program requirements, or

iii.  Participate fully in programs, services, and activities relating to SNAP;

b.  Defendant's procedures for seeking, responding to, and making decisions on reasonable accommodation requests, including timelines and lines of authority for granting and denying requests, conveying notice of the decision to the applicant or participant, and implementing the decision;

c.  The process for tracking and documenting requests for reasonable accommodations and responses;

d.  Interactions with applicants and participants regarding their possible needs for assistance or accommodation; and

e.  Examples of potential reasonable accommodations to be given to SNAP applicants and recipients with a disability.

2.  As part of its duty to coordinate DSS's compliance with the ADA, Defendant should create and implement a plan to ensure applicants and participants with a disability who request accommodations receive them timely, that staff are engaging in affirmative identification efforts regarding applicants and recipients with a disability who may need accommodations, and that approved accommodations are provided on an ongoing basis. This plan should include sampling of agency data, the generation of reports for review by senior compliance staff, and consulting with staff regarding their handling of accommodation requests. The plan should develop a mechanism to discover whether there are variations in ADA compliance across regions or offices

and/or by method of interaction with participants and applicants, and if variations

exist, take steps to address and correct inconsistencies.

### K. Implementation of new policies and procedures.

Implementation of new policies and procedures to comply with the SNAP Act,

constitutional due process, and the ADA must happen as soon as practicable. To ensure efficient

and effective implementation of relief, Plaintiffs propose the following:

1. Defendant apply with the United States Department of Agriculture's Food and
   Nutrition Service (FNS) for a six-month waiver of the recertification interview
   requirement, to allow Defendant time to implement new policies and procedures.

2. Defendant explore additional steps[6] to increase efficiency and conserve resources,
   and implement them if feasible and after receiving approval from FNS, if approval is
   required. These measures include but are not limited to[7]:

   a. An Elderly Simplified Application Project (ESAP), which would streamline
      the application process, provide 36-month certification periods, and waive the
      recertification interview requirement for elderly and disabled SNAP
      recipients; and

   b. Broad-based Categorical Eligibility, which would free up staff now required
      to verify resources for other activities such as conducting SNAP interviews.

3. In addition to the data required by the Court at ECF 161 at 39, ¶ 2, Defendants'
   monthly report include the *percentage* of calls that are deflected or redirected daily,

---

[6] The options listed herein are among several options recommended by FNS to state agencies struggling to keep up with the administrative burdens of operating SNAP. https://fns-prod.azureedge.us/sites/default/files/resource-files/end-phe-workload-mgmt-matric-snap.pdf
[7] Plaintiffs' counsel welcome the opportunity to confer with Defendant and Defendant's counsel regarding potential available flexibilities.

and the *percentage* of calls that are disconnected monthly by the caller prior to connected with a representative.

4. The Court retain jurisdiction over this matter until such time as:

   a. All policies and procedures ordered by the Court are fully implemented; and

   b. The following performance metrics have been met for at least twelve consecutive months:

      i. Monthly average wait time for Tier 3 is no longer than 15 minutes;

      ii. No more than 5% of calls are deflected or redirected; and

      iii. No more than 15% of denials are based on failure to complete an interview.

5. The Court establish a process through which the parties can resolve implementation and compliance disputes, prior to Plaintiffs filing a motion to enforce the Court's ultimate order on relief.

Dated: June 7, 2024

Respectfully submitted,

By: */s/ Katharine Deabler-Meadows*

Andrew J. Scavotto, #57826
J. Nicci Warr, #59975
Zachary T. Bucheit, #71816
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-8600
andrew.scavotto@stinson.com
nicci.warr@stinson.com
zachary.bucheit@stinson.com

20

Katherine A. Holley #71939
Jamie L. Rodriguez # 64323
Lisa J. D'Souza # 65515
Legal Services of Eastern Missouri
701 Market Street, Suite 1100
St. Louis, Missouri 63101
(314) 534-4200
kaholley@lsem.org
jlrodriguez@lsem.org
ljdsouza@lsem.org

Katharine Deabler-Meadows*
Saima Akhtar*
Nat'l Center for Law and Economic Justice
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967
deabler@nclej.org
akhtar@nclej.org
*Admitted Pro Hac Vice

Counsel for Plaintiffs