UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

MARY HOLMES, *et al.*,

           Plaintiffs,

    *-against-*

ROBERT KNODELL, in his official capacity as Acting Director of the Missouri Department of Social Services,

           Defendant.

Case No. 2:22-cv-04026-MDH

## MOTION TO CERTIFY APPEAL OF COURTS MAY 9, 2024, AND TO STAY PROCEEDINGS PENDING APPEAL

Defendant Robert Knodell moves this Court to amend its May 9, 2024 order to certify this matter for appeal under 28 U.S.C. §1292(b), and to say proceedings in this matter pending the Defendant's appeal of that order.

### CASE HISTORY

On February 22, 2022 Plaintiffs filed their initial complaint under 42 U.S.C. § 1983 alleging violations of the Supplemental Nutrition Assistance Program (SNAP) Act and enabling regulations, Due Process Clause, and the American's With Disabilities Act (ADA). An amended complaint was filed on March 22, 2023.

Both parties filed motions for summary judgment, and the Court heard arguments on January 29, 2024. On May 9, 2024, this Court entered an order

1

granting Plaintiffs' motion for summary judgment, but keeping the form of relief open. This Court entered injunctive relief in the form of requiring the parties to submit additional proposals for relief, and directing Defendant to file monthly reports regarding call center performance with the Court, the Missouri Governor's office, and numerous state legislators. On May 17, 2024, this court entered an order clarifying that its May 9, 2024, order was not an entry of judgment for purposes of Federal Rule of Civil Procedure 54 because "[w]hile Summary Judgment has been decided on the merits, the Court has yet to order the exact contours of relief awarded to Plaintiffs."

**REQUEST TO AMEND ORDER CERTIFYING THIS MATTER FOR APPEAL UNDER 28 U.S.C. § 1292(b).**

Under 28 U.S.C. § 1292(b), when a district court "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." A district court has broad discretion to grant or deny certification for interlocutory appeal. *See White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994). Certification should be used "only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation." *Union Cty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008).

Defendant respectfully requests this court amend its May 9, 2024 summary judgment order certify that "this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate

2

appeal from the order may materially advance the ultimate termination of the litigation." This is one of those "extraordinary cases" where an appellate decision on the merits of this case might avoid protracted and expensive litigation, for the reasons outlined below.

**A. The Court's May 9 summary judgment order involves controlling questions of law.**

All that must be shown in order for a question to be "controlling" is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court. *See, e.g., In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981). An issue may not be controlling if it relates to an issue that is collateral to the basics of the lawsuit. *Id.* "In order for an appeal to involve a controlling question of law, the appeal must raise some question of law which governs at least a claim, if not the whole case or defense." *McNamara v. Katten Muchin Rosenman LLP*, No. 4:16-CV-01203-SRB, 2017 WL 11493632, at *2 (W.D. Mo. Apr. 21, 2017) (citing *In re Air crash Disaster at John F. Kennedy Int'l Airport on Jun 24, 1975*, 479 F. Supp. 1118, 1125 (E.D.N.Y. 1978) for the proposition that "determination of liability, reserving the question of damages, may be a controlling question of law.").

Defendant notes that this Court acknowledged in its May 17, 2024 order [Doc. 167] clarifying the May 9 order that "[w]hile Summary Judgment has been decided on the merits, the Court has yet to order the exact contours of relief awarded to Plaintiffs." Because the May 9 summary judgment order decided this matter on the merits, the order naturally involves a controlling question of law that will materially

3

advance the ultimate termination of the litigation. It is fundamental to this case, and not a collateral issue, because this Court has already acknowledged the May 9 order decided the merits of this case versus what could be merely a collateral issue. This Court decided the issue of liability and reserved questions about relief. The issues of liability decided address each of the counts in Plaintiffs' First Amended Complaint.

Stated another way, while the Court may still resolve on the "exact contours of the relief" it wishes the craft for Plaintiffs, no such relief would be appropriate if the merits determinations made in the May 9 order were reversed upon appeal. This is the epitome of a "controlling legal issue," and so the May 9 order meets the criteria of 28 U.S.C. § 1292(b).

### B. These issues also have substantial ground for a difference of opinion.

These issues are also ones where there is a substantial ground for difference of opinion. A substantial ground for difference of opinion may be established by a dearth of precedent within the controlling jurisdiction or by conflicting decisions in other circuits. *See, e.g.*, *APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.*, 297 F. Supp. 2d 90, 97 (D.D.C. 2003).

There are substantial grounds for a difference of opinion on critical issues in this case. One such issue is whether the SNAP Act provides a private right of action. The SNAP Act contains no unambiguous conferral of a private right of action. *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 332 (2014) (plurality opinion quoting, in part, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). The typical remedy

4

for spending clause legislation such as the SNAP act is action by the Federal Government to terminate the funding provided under that legislation. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023).

In *Does v. Gillespie*, the Eighth Circuit, applying the Supreme Court's decision in *Gonzaga*, explained that a statute that does not clearly and unambiguously create an enforceable federal right cannot be enforced through Section 1983. 867 F.3d 1034, 1039-1040 (8th Cir. 2017) ("The typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State."). This is a critical, threshold issue in this case because without a private right of action under SNAP, a significant portion of Plaintiffs' lawsuit cannot proceed.

In footnotes 3 and 4 of *White*, the Eighth Circuit suggested that novel issues may be relevant factors to consider in evaluating the "substantial basis for difference of opinion factor." 43 F.3d at 377 n.3, n.4 (declining to certify a case under § 1292(b) but noting that the "legal issues [presented] are not novel" and citing another case that was certified for appeal which "involved novel controlling issues of law."); *see also Union Cnty., Iowa*, 525 F.3d at 647 (also analyzing the novelty of a legal issue presented). And in *Speer v. Cerner Corp.*, the Western District of Missouri specifically analyzed the second § 1292(b) factor to encompass "a novel issue of first impression about which reasonable jurists might disagree." No. 14-0204-CV-W-FJG, 2017 WL 10506771, at *1 (W.D. Mo. May 3, 2017).

5

Here, the issue of standing to bring a private cause of action for violations of the SNAP Act provisions that Plaintiffs claims were violated is novel issue in the Eighth Circuit. Under footnotes 3 and 4 of *White* and the Western District of Missouri's analysis in *Speer*, that factor points towards certifying this case for appeal under § 1292(b).

In addition, there is a split of authority on this issue between other courts. *Compare Barry v. Lyon*, 834 F.3d 706, 717 (6th Cir. 2016)*; Briggs v. Bremby*, 792 F.3d 239, 241 (2d Cir. 2015); *Gonzalez v. Pingree*, 821 F.2d 1526, 1530 (11th Cir. 1987); *Victorian v. Miller*, 813 F.2d 718, 724 (5th Cir. 1987) (holding there is a right of private action) *with Almendares v. Palmer*, 284 F. Supp. 2d 799, 808-10 (N.D. Ohio 2003); *Krieger v. Loudoun Cnty., Dep't of Soc. Servs.*, No. 5:13CV00073, 2014 WL 4923207, at *4 (W.D. Va. July 15, 2014); *Trefry v. Tracy*, No. 1:14-CV-00044-NT, 2014 WL 2154263, at *4 (D. Me. May 22, 2014). For example, in *Trefry* and *Kriegger*, the district court dismissed a case alleging SNAP Act violations against a Virginia state agency, and in *Almendares* the district court held that a SNAP Act provision lacked individual rights-creating language, specifically reasoning that "because the Food Stamp Act and its regulations do not create a private cause of action, the Ohio regulations do not either." 284 F. Supp. 2d at 808; *see also id.* at 810 ("plaintiffs do not have a declaratory judgment cause of action under the Food Stamp Act or its regulations. As I explained in my previous order, neither the Food Stamp Act nor its regulations create a federal right.").

And, even if the SNAP Act did provide private rights of action, any other right would have to be found in another statute in order to implicate Section 1983 or the Due Process Clause. Nothing in the SNAP Act statute requires the Defendant offer *phone* interviews or operate a call center at all, and so there is substantial ground for a difference of opinion on the issues that the District Court found. Additionally, the May 9 order finds Defendant violated the SNAP act and Due Process requirements regarding mailing an application on the first day of *phone* contact with the agency is found only in regulations. This is a novel issue that is appropriate for certification under *White* and *Speer*.

Other issues in this case are also either novel or reflect splits in other courts. There are questions as to whether these Plaintiffs, all of whom are receiving benefits, qualify for the "evading review" exception to the mootness doctrine because any potential future denial would not be of an inherently limited duration exception since a denial of benefits allows for the a full review of that decision before it would become moot. *See, e.g.*, *Doe No. 1 v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012). Similarly, there are considerable concerns regarding whether this matter is judicially redressable, as required for Article III standing. Plaintiffs' Amended Complaint did not request any specific relief that would provide "fair and precisely drawn notice" of what was actually required or prohibited. *Carson P. ex. Rel. Foreman vs. Heineman*, 240 F.R.D 456, 507 (D. Neb. 2007) (quoting *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir.1987)). Indeed, it may be due to this failure that this Court is still weighing the question of relief, which would naturally seem to indicate

7

Case 2:22-cv-04026-MDH   Document 165   Filed 06/10/24   Page 7 of 13

there is some difference of opinion as to whether this case is justiciable as presented to this Court.

Finally, regarding Plaintiffs' Americans with Disabilities Act claims, there are grounds for a substantial difference of opinion because an accommodation is required only where the accommodation is *requested* and is *necessary*. "[M]ere knowledge of the disability is not enough; the service provider must also have understood "the limitations [the plaintiff] experienced ... as a result of that disability." *Windham v. Harris County, Texas,* 875 F.3d 229, 236 (5th Cir. 2017). At least one district in the Eighth Circuit has held that an adverse decision must be made *because of* a disability. *Stebbins v. Arkansas*, No. 3:17-CV-03092, 2018 WL 2124105 *3-5 (W.D. Ark. 2018) ("There must be proof of a nexus—that the adverse decision was made because of the disability."). This Court's summary judgment order did not properly apply the "because of" standard under ADA case law. Defendant cited the *Stebbins* case in his summary judgment brief, but Plaintiffs did not address it in their response to Defendant's motion. And to the extent Plaintiffs believe that a "because of" standard does not apply here, Plaintiffs' opposition to Defendant's motion highlights cases where Plaintiffs believe that other courts did not apply that standard. [Doc. 147, p. 27, citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278–80 (2d Cir. 2003)].

Defendant believes there were not sufficient facts in the record demonstrating that any of the individual Plaintiffs properly made a request for a reasonable modification. See *Hall*, 77 F.4th at 1182. Absent a request, a plaintiff can only prevail if they show the individual's need for an accommodation is "open, obvious, and

8

apparent." *See id.*; *Windham*, 875 F.3d at 237. Plaintiffs' response to Defendant's summary judgment motion disclaimed any obligation for them to make their disability known in that way [Doc. 148. at pp.33-34], and this Court's analysis also did not address the "open, obvious, and apparent" requirement if a specific request for an accommodation is not made. There is ground for a substantial difference of opinion as to whether, in this case, the accommodations were both requested and necessary in a legal sense, as well as whether there was any requirement for Plaintiffs to make the need for an accommodation open, obvious, and apparent.

### C. Immediate appeal from the May 9 order may materially advance the ultimate termination of the litigation.

"To satisfy this element a movant need not show that a reversal on appeal would actually end the litigation. Instead, the relevant inquiry is whether reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018). In this case, reversal would at a minimum simplify the litigation by narrowing issues. Because this Court determined all of the claims in this case against Defendant on the merits, any reversal (even a partial one) would simplify the matters before this Court and conserve judicial resources by avoiding continuing the litigation to determine remedies for violations of the law that may be reversed on appeal. Because the Court's May 9 order otherwise meets all the requirement of 28 U.S.C. § 1292(b), all that remains is the statutory requirement that

this court explicitly state that in the order. Defendant respectfully requests this Court to amend the May 9, 2024, order to include the necessary certification language.

## REQUEST FOR STAY

Additionally, Defendant respectfully moves to stay further proceedings until the appeal of this Court's May 9, 2024, judgment is resolved pursuant to Rule 62 of the Federal Rules of Civil Procedure.

As to Item Nos. 1 and 4 of this Court's injunctive relief order, requiring Defendant to make representations regarding potential "fixes" (presumably under the threat of sanction or contempt proceedings) would significantly prejudice Defendant because these statements could then be used against Defendant in future proceedings—whether in this case or other proceedings. For Defendant to detail the "specific changes they contend are required to make Defendant's provision of SNAP benefits lawful and ADA compliant," Defendant would need to concede that their provision of those services is presently unlawful. Defendant is seeking to appeal this Court's determination of the legal determinations on these issues to the contrary, but for Defendant to make the reports required then Defendant would be put in a position of making a record of the extent of a problem that Defendant believes has not risen to a level of legal noncompliance. Defendant would not only need to spend the time and resources to study the extent of the problems identified in this Court's order to make a reliable forecast of its needs to address those problems, Defendant would then have made statements in this Court's record that Defendant expects will invariably

be used by Plaintiffs against Defendant in other contexts—whether in this litigation or elsewhere.

These concerns are especially apparent with Item No. 4 of this Court's injunctive relief order. Requiring Defendant to submit a "proposed plan of action" requires Defendant to operate for an unknown length of time effectively as if this Court's summary judgment order is final. Typically, parties are not required to take affirmative steps in litigation to provide relief to the other party until an order is final. This Court's injunctive relief orders Defendant to start that process of starting to make Plaintiffs "whole" as to Defendant's operations that Defendant has contested do not rise to the level of legal noncompliance. Defendant believes that it is appropriate to stay any of these obligations until an appellate court has weighed on the factual and legal issues—and thus any liability of Defendant.

Finally, Defendant believes that submitting a "proposed plan of action" as detailed and ordered in Item No. 4 will require the Department of Social Services to devote time and resources on a shortened timetable. An appropriate proposed plan of action, if one were to be submitted, requires sufficient expertise in complex areas of business operations. This will take significant hours and resources to accomplish, and it is something that Defendant believes should not be required unless and until all issues in this case have been conclusively been decided on appeal.

Defendant also notes that the Missouri General Assembly is no longer in session, and will not be so for the remainder of 2024. Thus, beginning to make reports on this issue will not be able to result in tangible legislative action for at least half a

year. The requirements noted in Item Nos. 2 and 3 of this Court's injunctive relief were not requested by Plaintiffs as relief in their Amended Complaint, and they effectively impose additional discovery obligations on Defendant.

Because this appeal involves important questions of standing, justiciability, and statutory interpretation in a factually robust case, and because enforcing the interlocutory injunctive relief in that order will prejudice Defendant in future proceedings in this case, Defendant requests that this Court also stay enforcement of its May 9, 2024, order. This request is in the interest of judicial economy and within the powers of this Court to control its own docket.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant a stay of proceedings pending resolution of the ongoing appeal in the Eighth Circuit.

    Respectfully Submitted,

ANDREW BAILEY
Attorney General of Missouri

*/s/ Hardin T. Haynes*
Jason K. Lewis, #66725
*General Counsel*
Hardin T. Haynes, #67474
*Assistant Attorney General*
Missouri Attorney General's Office
207 W. High Street
Jefferson City, MO 65102

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was forwarded to all attorneys of record via the Court's electronic filing system this 7th day of June, 2024.

*/s/ Hardin T. Haynes*
