UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MARY HOLMES, DENISE DAVIS, ANDREW DALLAS, and EMPOWER MISSOURI,<br><br>        Plaintiffs,<br><br>   *-against-*<br><br>JESSICA BAX, in her official capacity as Acting Director of the Missouri Department of Social Services,<br><br>        Defendant. | Case No. 2:22-cv-04026-MDH<br><br><br>**<u>PLAINTIFFS' PROPOSED<br>ORDER ON RELIEF</u>** |

## I.  OBLIGATIONS OF THE PARTIES

<u>SNAP Right to File</u>

1.  This Court has determined Defendant's policies and practices do not comply with the SNAP Act, as:

    a)  "DSS policy stipulates that applicants can access SNAP applications online, by mail, in person at a Resource Center,[1] or at DSS community partner locations." ECF 161 at 6. Individuals can also contact the Call Center[2] and request that an application be mailed to them. However, Resource Center hours are inconsistent and poorly advertised, ECF 161 at 10, and there is no automated mechanism to request a mailed application over the phone, ECF 161 at 6.

---

[1] Resource Centers are DSS offices that are open to the public for assistance, and the place where Defendant conducts face-to-face SNAP interviews. ECF 138 at 11, 145 at 7.
[2] Defendant conducts telephonic SNAP interviews through Customer Service Centers and Processing Centers, which are often referred to collectively as a Call Center. ECF 145 at 7. Call Center workers also answer general questions, process cases after the interview is complete, and inform callers of possible resources. ECF 138 at 12.

CORE/3008198.0047/196476800.1

b)      Plaintiff Holmes made multiple attempts to request an application via the Call Center, but was never able to speak with a DSS employee. ECF 161 at 14.

c)      After three days of trying to reach DSS by phone, Plaintiff Holmes paid a relative to drive her to a Resource Center, where she was able to submit an application. ECF 161 at 14.

d)      Plaintiff Holmes was not given the opportunity to apply for SNAP on the first day that she contacted Defendant's agency. ECF 161 at 26.

2.      In light of these findings and other facts, the Court concluded Defendant wrongfully deprived Plaintiff Holmes of her right to file a SNAP application on the first day she contacted Defendant's agency, as required by 7 U.S.C. § 2020(e)(2)(B) and implementing regulations. ECF 161 at 26. To provide Plaintiffs with meaningful relief, the Court now orders Defendant to take the following actions in order to comply with the SNAP Act's right to file requirement.

3.      DSS shall continue to provide an option to complete and submit a SNAP application online and to complete and submit a SNAP application on a mobile device.

4.      DSS shall allow individuals to request via phone that a paper application be sent to them via U.S. mail. DSS shall implement an automated IVR[3] menu option, through which individuals can request a paper application be mailed to them without speaking to a DSS worker, and without waiting on hold at any point (either before or while making the paper application request).

---

[3] Defendant's phone system has an Interactive Voice Response (IVR) system, which everyone who places a call to Defendant must navigate. ECF 138-7; 138 at 13; 145 at 11.

5.    Defendant shall make the IVR option discussed in paragraph 4 available to all callers, without the requirement to enter a Social Security Number or DCN[4] until after the menu option has been selected.

6.    Defendant shall ensure that the IVR option discussed in paragraph 4 informs callers they may apply for SNAP online, and provides the website address for the online SNAP application.

7.    Defendant shall allow individuals to request online that a paper application be sent to them via U.S. mail. DSS shall develop an online request form for this purpose. Defendant shall make the online request form available on DSS's website.

8.    Defendant shall establish a system through which all requests for mailed paper SNAP applications are processed through a centralized system and/or team.

9.    Defendant shall mail all requested paper SNAP application forms within one business day of the request.

10.    Defendant shall establish a system for tracking the following information concerning the requesting and mailing of paper SNAP applications:

    a)  Date of Request

    b)  How the Request Was Received (e.g., via Call Center, online, etc.)

    c)  Date Mailed

11.    Defendant shall update DSS's website, IVR menu, physical postings, social media channels, and all other relevant communications channels regarding changes to Resource Center hours that are planned in advance. These updates shall occur one week prior to implementation

---

[4] The DCN is the "Department Case Number," a unique number assigned by Defendant to individuals seeking benefits.

Case 2:22-cv-04026-MDH    Document 212-1    Filed 02/28/25    Page 3 of 30

of the change. If changes are planned within one week of implementation, then notice shall be communicated as soon as practicable, but no later than one business day before implementation.

12.     Defendant shall publicize through the channels listed in paragraph 11 any changes in Resource Center hours not planned in advance (e.g., the only staff member at a minimally staffed Resource Center calls out of work).

13.     Resource Centers shall be open and available to the public at their posted hours.

<u>Wrongful Denials</u>

14.     This Court has determined that Defendant's policies and practices do not comply with the SNAP Act, as:

a)      Defendant conducts mandatory SNAP interviews using a Call Center, on an on-demand basis. ECF 161 at 5. The Call Center features "unacceptable wait times" and frequent deflected calls. ECF 161 at 2.

b)      Alternative paths to interview are insufficient. Defendant utilizes a Predictive Dialer[5] to call applicants[6] soon after their applications are submitted, but most applicants are called only once. ECF 161 at 8. Applicants can request to be interviewed in Resource Centers, but staffing in many Centers is insufficient, and Resource Center hours are inconsistent and poorly communicated. ECF 161 at 10. Face-to-face interviews requested at Resource Centers are not available same day. ECF 161 at 9. Applicants can attempt to schedule a phone appointment, but there are only fifteen appointments available per hour for the entire state of Missouri. ECF 161 at 9.

---

[5] The Predictive Dialer is Defendant's system that places outbound calls to households that have submitted SNAP applications. ECF 138 at 36-37.
[6] Throughout this Order, the term applicants refers to both those submitting an application for SNAP benefits as well as those submitting recertification documents to continue receiving SNAP benefits.

4

c)     Defendant uses an automated system to deny SNAP applications for failure to interview, regardless of whether the applicant has attempted to interview, and without regard for the merits of the application. ECF 161 at 2, 15, 17-19, 25.

d)     Defendant denied Plaintiffs Holmes' and Davis' SNAP applications for failure to interview. Both Plaintiffs were eligible for SNAP at the time of their applications, and both made numerous attempts to interview. ECF 161 at 14-15, 16-19. Both Plaintiffs are at substantial risk of recurring harm, because Defendant's unlawful policies and practices continue. ECF 161 at 28.

e)     Defendant's failure to provide timely, accurate, and fair service to SNAP applicants has caused Plaintiff Empower Missouri to divert significant financial and staffing resources to these issues. ECF 161 at 27. Plaintiff Empower Missouri continues to suffer harm by this diversion of resources, because Defendant's unlawful policies and practices continue. ECF 161 at 28.

15.     In light of these findings and other facts, the Court concluded Defendant "is required to provide benefits to all eligible applicants and must ensure that it has a system that allows for this to happen," ECF 161 at 25, and Defendant had violated 7 U.S.C. § 2014(a) and 7 U.S.C. § 2020(e)(2)(B) by failing to do so, causing the wrongful denial of Plaintiffs Holmes' and Davis' SNAP applications, ECF 161 at 37, and the diversion of Plaintiff Empower Missouri's resources, ECF 161 at 27-28.

16.     This Court has determined that Defendant's policies and practices do not comply with the Due Process Clause of the Fourteenth Amendment, as:

a)     Defendant denied Plaintiffs Holmes' and Davis' SNAP applications for failure to interview. Both Plaintiffs were eligible for SNAP at the time of their applications, and

both made numerous attempts to interview. ECF 161 at 14-15, 16-19. Both are at substantial risk of recurring harm, because Defendant's unlawful policies and practices continue. ECF 161 at 28.

     b)    SNAP applicants such as Plaintiffs Holmes and Davis have a property interest in SNAP benefits. ECF 161 at 30.

     c)    Defendant violated Plaintiffs Holmes' and Davis' due process rights because the process provided prior to denial of their applications was insufficient under the *Mathews v. Eldridge* test. ECF 161 at 31.

     d)    Defendant also violated Plaintiffs Holmes' and Davis' due process rights because the decision to deny their applications constituted arbitrary decision making. ECF 161 at 31.

17.    In light of these findings and other facts, the Court concluded Defendant deprived Plaintiffs Holmes and Davis of due process by denying their SNAP applications arbitrarily and without adequate process. ECF 161 at 31-32.

18.    To provide Plaintiffs with meaningful relief, the Court orders Defendant to take the following actions in order to comply with the SNAP Act and the Due Process Clause.

19.    Defendant shall not deny applications for failure to interview when the applicant has attempted to complete their interview between the filing of the SNAP application and the relevant processing deadline. For the purposes of this Order, "attempt to interview" means that an applicant:

     a)  Has called into the Tier 3 Inbound[7] Line on one occasion, and was deflected;

---

[7] Tier 3 is Defendant's telephone line that is dedicated to SNAP interviews. There is both a Tier 3 Inbound Line, which takes calls from applicants to the Defendant, and a Tier 3 Outbound Line, which handles calls placed by the Predictive Dialer to SNAP applicants. After callers navigate the IVR, they are placed in a Queue until DSS staff are able to take their call and complete the interview. ECF 138-2 at 8-13, 15; 138-4 at 31-32; 138-7.

b) Has called into the Tier 3 Inbound Line on two occasions, and entered the Tier 3 Inbound Queue on those two occasions;

c) Has visited a Resource Center, and had the visit logged in Current[8] after submitting a SNAP application but before completing an interview; or

d) Has scheduled an interview appointment, either face-to-face or telephonic.

20. To determine if the applicant has attempted to interview, DSS shall, using agency records:

a) Determine if one or more calls were placed to the Tier 3 Inbound Line from the phone number listed on the SNAP application, and determine the result of any calls;

b) Determine if a person with the applicant's Social Security Number or DCN called into the Tier 3 Inbound Line, and determine the result of any calls;

c) Determine if the applicant visited a Resource Center while the application was pending and prior to the completion of an interview; and

d) Determine if the applicant has an interview appointment (face-to-face or telephonic) scheduled.

21. Defendant may automate the records checks described in paragraph 20, to the extent possible.

22. Defendant shall place at least one outbound call to attempt to interview each SNAP applicant household not entitled to expedited processing.[9]

---

[8] Current is Defendant's electronic task management system, which is used to assign non-Call Center tasks to processing center and Resource Center staff. ECF 145 at 11; 138-4 at 11.
[9] Applicants whose income and assets are extremely low (monthly income below $150 and resources of $100 or below), or whose shelter costs exceed their income, are identified for expedited processing. If found eligible, they are entitled to receive SNAP benefits within 7 days of applying, but they must complete their interview before they can receive the benefits. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i)(1).

7

23.     Defendant shall place at least two outbound calls to attempt to interview each SNAP application household that screens eligible for expedited processing.

24.     Prior to placing outbound interview calls, Defendant shall send a text message to the phone number on the SNAP application notifying the applicant that a SNAP eligibility worker will be contacting them within the next day, and encouraging the applicant to answer the call and complete their SNAP interview. This text will be sent as early as possible after Defendant has generated the list of applicants to be contacted by the Predictive Dialer that day. The text will inform applicants they may contact the Call Center, explain they have the option to schedule an interview, provide information as to how an interview can be scheduled, and provide a link to the online scheduler.

25.     On a quarterly basis, Defendant shall evaluate the answer rate and interview completion rate for the Predictive Dialer, and shall adjust its practices—including attempting new approaches—to increase the effectiveness of the Predictive Dialer.

26.     Defendant shall review and consider suggestions from Plaintiffs for enhancing the effectiveness of the Predictive Dialer. If Plaintiffs have a suggestion, they shall provide it to Defendant in writing. Defendant shall respond in writing, within one month, with a decision as to whether the suggestion will be implemented. Defendant's written response shall also include an implementation timeline for suggestions that are to be implemented. For suggestions that will not be implemented, Defendant shall provide a comprehensive explanation as to the refusal to implement.

27.     Defendant shall inform SNAP applicants who apply in person at Resource Centers that they have the option to interview on the same day they submit their application.

28.     When an applicant makes a request in person at a Resource Center for a face-to-face interview, Defendant shall follow the following procedures:

a) Provide the applicant with a face-to-face interview on the same day of their request, except when staff availability does not allow.

b) If staff availability does not allow for a face-to-face interview the same day as the request, provide the applicant with an appointment for a face-to-face interview scheduled within the following five days.

c) If staff availability does not allow for a face-to-face interview the same day as the request and the applicant cannot return to the Resource Center within the next five days, provide the applicant with a face-to-face interview appointment at a date and time convenient to the applicant, and within 30 days of the date of their application.

d) Defendant shall only divert an applicant who has requested a face-to-face appointment to a telephone interview appointment—whether in the Resource Center or via a telephone—with the applicant's consent.

29.     Defendant shall document all requests for face-to-face interviews in the applicant's electronic case file. Such documentation shall include the date the face-to-face interview was requested, and state either (a) the interview was completed on the day of request or (b) scheduled for a future date, specifying both the date and manner of the scheduled interview. When an applicant initially requests a face-to-face interview and subsequently consents to a telephone interview, the case file must document why the alternative interview format was offered and provided.

9

30.     Defendant shall send a notice to applicants within one day of the submission of a SNAP application informing them of the interview requirement and the ways in which an interview can be completed. This notice should also inform applicants to expect the Predictive Dialer call.

31.     Defendant shall send a notice five days after the submission of a SNAP application, if the applicant has not completed an interview by that date. This notice shall remind the applicant of the various ways in which an interview can be completed, including the option to have a face-to-face interview at a Resource Center, and the option to schedule a telephone or face-to-face interview.

32.     Defendant shall offer applicants the opportunity to schedule interview appointments online, in person, and in the Call Center's Tier 3 Inbound Line. Applicants must be able to choose either a telephone interview or a face-to-face interview at a Resource Center convenient for them. Face-to-face interviews and appointment scheduling for such interviews shall be available during business hours at every Resource Center.

33.     Defendant shall offer callers to the Tier 3 Inbound Line the opportunity to schedule a telephone or face-to-face interview:

      a)  When they reach the Tier 3 Inbound Queue;

      b)  When they are deflected or redirected from the Tier 3 Inbound Queue; and

      c)  When they have waited on hold for more than twenty minutes.

34.     Defendant shall make telephone appointments available only to SNAP applicants who need to complete SNAP interviews, and callers seeking reasonable accommodations.

10

35. Defendant shall schedule interview appointments for applicants prior to the thirtieth day after their application was submitted. If an appointment prior to the thirtieth day is not available, then Defendant shall give the applicant the soonest available appointment.

36. When an applicant has an interview scheduled for more than thirty days after their application was submitted, Defendant shall not deny the application for failure to interview prior to the scheduled appointment. As an eligibility determination cannot be made until after the interview is completed, Defendant may encourage applicants with scheduled interviews to continue to try other methods of completing an interview.

37. Defendant shall allow applicants who complete interviews sufficient time, not less than 10 calendar days after their interview, to submit any verifications, as required by 7 C.F.R. § 273.2(f). Defendant shall comply with this provision even when the interview is completed after the processing deadline.

38. On the 14th day after the submission of each SNAP application, Defendant shall determine whether the applicant has (1) made two calls to the Call Center from the phone number listed on their application, and (2) been deflected or waited on hold for more than 20 minutes during each of those two calls.

39. For all applicants who have made any of the attempts described in paragraph 38, Defendant shall, on the 15th day after the application, send a text explaining that if the applicant has not completed their SNAP interview, they will be receiving a call within the next day. The text shall also inform the applicant that they can schedule an interview, and explain how they can do so. On the 16th day after the application, Defendant shall place one call to the applicant.

40. Defendant shall send notices that comply with paragraph 41 to applicants who have not completed interviews on (1) the fifth day after application, (2) again on the day after

any missed scheduled interview, and (3) for callers receiving outreach actions as described in paragraphs 38-39, on the 17th day, following the outbound dialer calls made on the 16th day.

41.     Defendant shall ensure SNAP notices sent to applicants who have not completed an interview, including notices sent related to SNAP recertifications, clearly inform SNAP applicants that they can complete an interview by:

    a)  Answering calls from DSS placed within three days of application submission and/or sixteen days after application submission;

    b)  Calling the Call Center during business hours;

    c)  Going to their local Resource Center during the Resource Center's business hours; and

    d)  Scheduling a phone interview by calling into the Call Center and selecting the appropriate menu option or using the online scheduler.

42.     Defendant shall continue to participate in the ongoing referral process established by the parties earlier in this litigation. Defendant shall continue to schedule interviews for specific dates and times upon email request from Plaintiffs' counsel or any Missouri legal services organization, for the duration of the Court's jurisdiction. Defendant may direct these referrals to a specific email address and/or to designated staff. Defendant shall ensure any established email inbox is checked daily.

43.     Defendant shall conduct ongoing efforts to recruit, train, and retain staff, to ensure DSS employs sufficient staff to provide meaningful access to SNAP interviews, and to meet other agency obligations.

12

44.    On a quarterly basis, DSS shall assess the number of Call Center staff needed to achieve the Performance Metrics described in paragraph 92, and shall take all practicable steps to assign such staff to the Tier 3 Inbound Queue and the Tier 3 Outbound Queue.

45.    Defendant shall explore all possible options and/or waivers with the federal government to streamline DSS's SNAP administration, and make more staff available to conduct SNAP interviews, and thus move Defendant toward compliance with the SNAP Act, Due Process, and this Order.

Americans with Disabilities Act

46.    This Court has determined that Defendant's policies and practices do not comply with the ADA, as:

a)    Defendant's only policy regarding ADA accommodations for SNAP participants is contained in the Non-Discrimination Policy Statement, ECF 140-9. This does not reference disability status, indicate that reasonable accommodations are required by federal law, or explain how to request a reasonable accommodation. ECF 161 at 11. Similarly, notices sent to SNAP applicants and SNAP households do not include information on how to request a reasonable accommodation or file an ADA-related complaint. ECF 161 at 13. Callers communicating through the Call Center never hear that SNAP applicants or other callers with disabilities can request an accommodation. ECF 161 at 14.

b)    Defendant has no written standards or criteria for granting, denying, or otherwise resolving requests for reasonable accommodation. Defendant does not track or monitor the handling of requests for reasonable accommodations, nor the implementation of any granted requests. If DSS denies a request for a reasonable accommodation, there is no written policy, standard, or mechanism for the individual to appeal that denial within DSS. ECF 161 at 11-12.

c)      Defendant's ADA trainings do not discuss how to respond to a request for accommodation where a client's needs must be met over the phone. They do not discuss how to recognize or acknowledge an accommodation request, how to identify when a SNAP participant or applicant with a disability might need a reasonable accommodation, or whether to affirmatively offer assistance. ECF 161 at 12-13.

d)      Defendant does not stay or toll SNAP deadlines regarding compliance with eligibility requirements while a reasonable accommodation request is being processed. No policy allows a granted reasonable accommodation to continue the next time the SNAP applicant or recipient interacts with the agency. No policy establishes any timeline to make a decision on a reasonable accommodation request. No written policy explains who has the authority to grant or deny reasonable accommodation requests. ECF 161 at 12.

47.     In light of these findings and other facts, the Court concluded Defendant wrongfully deprived Plaintiffs Holmes and Dallas of meaningful access because of their disabling conditions. ECF 161 at 34-35. To provide Plaintiffs with meaningful relief, the Court now orders Defendant to take the following actions in order to comply with the ADA.

48.     Defendant must develop a SNAP ADA Policy that ensures DSS can and will comply with the ADA. Specifically, Defendant's policy must:

a)    Contain a simple explanation of the ADA that can be easily understood by non-legal staff, explaining the general requirements of the ADA, the people protected by the ADA, and Defendant's obligation for compliance;

b)    Offer examples so staff can understand terms of art, including but not limited to "disability," "physical impairments," "mental impairments," and "major life activities;"

14

c) Explain the role, duties, authority, and contact information for the ADA Coordinator;

d) Include Defendant's obligation to notify the public of rights under the ADA, set forth Defendant's statement of these rights, and list the places in which this notice of rights will be posted;

e) Detail the process for filing ADA grievances;

f) State the ADA's non-segregation mandate;

g) Explain in detail what reasonable accommodations are and who is entitled to a reasonable accommodation, detail the specific process staff must follow to process requests for reasonable accommodations, and ensure reasonable accommodations are provided on an ongoing basis when so required;

h) Provide examples of available accommodations in a non-exhaustive list, including accommodations to applicants or participants, those who accompany applicants or participants, and those with mental health or cognitive disabilities;

i) State the timeframes for processing reasonable accommodations requests, ensure those who request accommodations receive written notice of the Defendant's decision, and ensure that any deadlines are tolled while a request is pending;

j) Ensure the case file of any participant seeking a reasonable accommodation documents their disability, the type of accommodation request, whether the request was granted or elevated or denied, the reasons for denial if denied,

whether an alternative accommodation was offered and accepted or rejected, and whether the accommodation requested was provided;

k) State Defendant's ADA training policy, which at a minimum must ensure that all staff who interact with the public receive ADA training annually, and new hires receive ADA training as part of their onboarding and orientation; and

l) Include in these ADA trainings: (1) general information about Title II of the ADA, (2) detailed information about Defendant's ADA policy, and (3) information about Defendant's ADA forms and statements in notices.

49. Defendant must develop forms to ensure compliance with the ADA. Such forms must include a form for submitting complaints of disability discrimination, a form for submitting a request for a reasonable accommodation, and a notice of disability rights.

50. Within 14 days of the entry of this Order, Defendant shall submit its proposed SNAP ADA Policy (and any attendant forms) to Plaintiffs for review and comment. Plaintiffs shall respond within 10 days. Defendant shall consider Plaintiffs' suggestions, revise the proposal, and submit Defendant's proposed SNAP ADA policy (including forms) to this Court no later than 30 days after the entry of this Order.

51. Once approved by the Court, Defendant shall

a) Make the SNAP ADA Policy available to all DSS workers, and ensure all workers comply with the Policy;

b) Make the SNAP ADA Policy and all ADA forms available on the DSS website; and

16

c) Provide forms to members of the public upon request, including via U.S. mail for those making telephonic requests.

52. Defendant shall maintain a webpage dedicated to its ADA policy that adheres to the Web Content Accessibility Guidelines (WCAG) 2.1 and all applicable successor standards. This website will include (1) hyperlinks to all ADA-related forms, policies, posters, and notices; (2) a link to the email address to which applicants or participants may send requests for accommodation or file grievances; and (3) contact information for Defendant's ADA Coordinator.

53. Defendant shall include a Disability Rights Statement in all notices sent to SNAP applicants and participants. The Disability Rights Statement must state:

a) People with disabilities have the right to fully participate in Defendant's SNAP program, including the right to access SNAP benefits for which they are eligible;

b) People with disabilities have the right to access Defendant's SNAP program free from any discrimination;

c) People who—due to disability—need help completing a SNAP application or participation requirements may seek assistance from Defendant, and provide methods by which such assistance can be sought;

d) People who require alternative communication may request this and the methods by which such a request can be made; and

e) People who believe they have experienced discrimination based on a disability may file a complaint, and the methods by which such a complaint can be made.

17

54. Defendant shall ensure that persons with disabilities are provided the opportunity to access and participate in SNAP, in a manner that is equal to others.

55. Defendant shall not use methods of program administration that have a discriminatory effect on people with disabilities.

56. Defendant shall permit persons with a disability to seek an accommodation at any time and in any manner, and at every point of contact in the eligibility process, including prior to submitting a SNAP application. This includes any and all telephone contacts, in-person contacts, contacts via mail, and online contacts.

57. Defendant shall not require SNAP applicants or recipients to utilize any specific form, document, phrasing, or wording to request a reasonable accommodation.

58. Defendant shall, at application for or recertification of benefits, inquire into whether applicants or participants might need reasonable accommodations to access or retain benefits.

59. Defendant shall instruct DSS staff to inform individuals of the tasks required to apply for or recertify eligibility for the SNAP program, ask the individual if they will have difficulty or need assistance, and invite the individual to describe any help they might need. If the individual expresses a difficulty or need for assistance that may be related to a disability, then Defendant's staff shall document the circumstances and their response and treat it as a request for reasonable accommodation. If the individual does not disclose a disability or does not wish to discuss an accommodation, the worker shall not make further inquiries on this subject.

60. Defendant shall ensure that SNAP applicants and participants can request a reasonable accommodation, SNAP applicants and participants with disabilities receive

reasonable accommodations, and the accommodation request process places the least burden possible on the applicant or participant.

61.     Defendant shall implement and maintain an option in the IVR menu to connect applicants and participants directly with a DSS staff member to request a reasonable accommodation during business hours. Outside of business hours, the IVR menu option shall connect to a designated voicemail box, which shall be checked by the ADA Coordinator or the Coordinator's designee each business day. Messages shall be returned by the ADA Coordinator of the Coordinator's designee within one business day.

62.     Defendant shall implement and maintain a trigger in DSS Chat[10] to allow SNAP applicants and participants to request a reasonable accommodation.

63.     Defendant shall implement a centralized email address to which individuals may submit requests for reasonable accommodations, or another effective mechanism for individuals to both (a) submit a request for an accommodation and (b) receive confirmation the request has been submitted.

64.     Defendant shall record all accommodation requests, including:

    a)  The name of the person and their disability;

    b)  The type of accommodation requested;

    c)  Whether the request was granted or denied;

    d)  Whether the accommodation requested or any other accommodation was provided;

    e)  Dates for the accommodation request and any DSS decision related to the request; and

---

[10] DSS Chat is a chat platform available on Defendant's website, which uses a bot that is programmed to provide scripted answers to common questions. ECF 138-3 at 38-43.

f) For denials, the reason an accommodation request was denied.

65. Defendant shall ensure that DSS staff receiving reasonable accommodation requests:

a) Document the request in the individual's electronic case file, approve the request the day it is made (unless impossible), and document the approval on the form forwarded to the ADA Coordinator;

b) If unable to approve the accommodation request at the time the request is made, will work through chain of command and pursue approval by a supervisor during the initial interaction; and

c) If an approval cannot be made at the time of the request, DSS staff and supervisors will notify the ADA Coordinator, who will be charged with resolving the pending request.

66. Defendant shall require DSS staff who are unable to grant a reasonable accommodation at the time it is requested to alert their supervisor immediately.

67. Defendant shall require DSS supervisors who are unable to grant a reasonable accommodation at the time they are alerted by their supervisee to alert the ADA Coordinator on the same day the original accommodation request was made.

68. Defendant shall provide reasonable accommodations on an ongoing basis, and shall not require SNAP applicants or recipients to request reasonable accommodations anew each time they interact with DSS.

69. Defendant shall ensure that case file documentation of granted reasonable accommodations is sufficient for DSS workers to provide accommodations on an ongoing basis.

70. Defendant shall implement a flag to be applied to electronic case files, which will alert DSS workers that a SNAP applicant or recipient has been granted—and must be provided—a reasonable accommodation.

71. Defendant shall log and track all reasonable accommodation requests, including: the date and content of the accommodation request, the timeline for consideration, the date and content of the approval or denial, the date and content of notice to the individual, and the date on which the accommodation was initially provided.

72. Defendant shall ensure only the DSS ADA Coordinator shall have the authority to deny a request for an accommodation. Such a denial may only occur when:

    a) The requested accommodation, if granted, would fundamentally alter the nature of Defendant's programs, benefits, and services under SNAP; or would—in light of all resources available for use in the funding and operation of the SNAP program—impose an undue financial and administrative burden on program operations; or

    b) After being given a reasonable opportunity and assistance, an individual whose disability is not readily apparent fails or refuses to comply with a request of authorized DSS staff to provide appropriate documentation of disability.

73. In the event a reasonable accommodation request is denied by the ADA Coordinator, Defendant shall—within five business days—issue a written notice of denial in a format accessible to the applicant or recipient. This notice will inform the applicant/recipient of the determination and their right to grieve the determination, including the person's right to complain if they feel they were treated unfairly because of a disability.

74.     In the event a reasonable accommodation request is granted by DSS staff, supervisors, or the ADA Coordinator, Defendant—within five days—shall issue a written notice to the person to whom an accommodation is provided, informing them the accommodation has been granted and will be provided on an ongoing basis, for as long as the accommodation is necessary. The notice will also include information regarding the grievance process, including the person's right to complain if they feel they were treated unfairly because of a disability.

75.     Whenever possible, Defendant shall provide accommodations on the same day they are requested. Absent extraordinary circumstances, Defendant shall not take more than five days to respond to a request for a reasonable accommodation.

76.     If an individual has requested (or been identified as potentially needing) an accommodation to comply with program requirements, then Defendant shall toll the deadline for compliance while the request is resolved, including a decision on any grievance or complaint. Defendant shall not take any adverse actions regarding the SNAP benefits of the applicant or participant while an accommodation request is under consideration.

77.     Applicants and participants with disabilities have the right to refuse the offered reasonable accommodations. Defendant shall ensure that before taking any adverse action against an individual who has refused an accommodation, staff re-offer the accommodation and inform the individual that an adverse action may be taken if they are unable to comply with a program requirement as a result of refusing the accommodation.

78.     Individuals who refuse accommodations shall retain the right to request and receive accommodations subsequent to any refusal.

79.     Defendant shall provide SNAP applicants and participants an opportunity to submit a grievance or complaint to an impartial decisionmaker within DSS regarding any

decision to deny a request for reasonable accommodations, or regarding any actions alleged to constitute discrimination on the basis of disability.

80.     Defendant shall notify anyone who requests an accommodation and is dissatisfied, or who believes they were treated unfairly because of a disability, about the immediate right to file a grievance or complaint directly. Such notification shall include the process for filing said grievance or complaint.

81.     Defendant shall accept grievances both in writing and orally.

82.     In the event a SNAP applicant or participant makes a grievance orally, DSS staff shall record the grievance in writing and submit it for processing.

83.     All grievances made by a SNAP applicant or participant shall be investigated—and a decision and resolution shall be reached—within 10 business days. The DSS ADA Coordinator shall be responsible for ensuring compliance with this deadline.

84.     Defendant shall issue a written notice of determination following the decision and resolution of all ADA grievances filed by SNAP applicants and recipients. The notice shall include the reasons for the decision, any underlying facts on which the decision was based, and any remedies offered. Grievances shall not be considered resolved and decided until such notice is issued.

85.     Defendant shall document grievance decisions in the SNAP applicant or recipient's case file.

86.     Copies of all grievances and subsequent denial/accommodation decisions shall be kept on file by the ADA Coordinator.

87.     The ADA Coordinator shall review, track, and monitor grievances. The ADA Coordinator shall regularly assess whether there is a need for changes in policies or practices or for additional trainings, and if so, take steps to obtain these changes or provide the training.

88.     Defendant shall contact Plaintiffs' counsel within 14 days of this Order to schedule an interactive assessment with Plaintiffs Holmes and Dallas, to determine what barriers they have to accessing the SNAP program that are due to a disability; what accommodations they require, if any; whether their preferred accommodation would require a fundamental alteration of the SNAP program; what other potential accommodations would remove the barrier to meaningful participation in the SNAP application or recertification process; the effectiveness and feasibility of potential accommodations; and the individual's preference between possible accommodations that are both effective and reasonable. Based on this assessment, Defendant shall determine what accommodations, if any, are effective and reasonable; and issue a written notice to Plaintiffs Holmes and Dallas describing their determination. To the extent either Plaintiff Holmes or Plaintiff Dallas requires ongoing accommodations, Defendant shall ensure such accommodations are provided.

Data and Reporting

89.     For the duration of the Court's jurisdiction over this action, Defendant shall comply with all monthly reporting obligations required by the Court's prior Order, ECF 161.

90.     In addition to the reporting required by the Court's prior Order, ECF 161, Defendant shall provide the following to the Court on a monthly basis, beginning the month after the signing of this Order. Reporting shall be filed by the fifteenth of each month, and reflect data from the prior month.

        a)   A Paper Applications Request Report, which shall include:

24

1. The total number of paper SNAP applications requested in the previous month, broken down by means of request;

2. The total number of paper SNAP applications mailed within one business day of the request in the previous month, broken down by means of request;

3. The total number of paper SNAP applications mailed within one week of the request in the previous month, broken down by means of request;

4. The total number of paper SNAP applications mailed within two weeks of the request in the previous month, broken down by means of request; and;

5. The total number of paper SNAP applications mailed within more than two weeks of the request in the previous month, broken down by means of request.

b) An Interview Request Report, which shall include:

1. The total number of interviews requested via the appointment scheduler;

2. The number of appointment requests scheduled for a date before the relevant processing deadline;

3. The number of appointment requests that were not scheduled for a date before the relevant processing deadline;

4. The number of interviews requested by applicants in Resource Centers;

25

5. The number of face-to-face interviews in Resource Centers provided on the same day as requested;

6. The number of face-to-face interviews provided in Resource Centers within 5 days of the request;

7. The number of face-to-face interview provided in Resources Centers more than 5 days after the request; and

8. The number of telephone interviews scheduled or conducted for an individual who had made a request for an interview at a Resource Center, or who submitted an application in person at a Resource Center.

c) An Accommodations Request and Grievances Report, which shall include

1. The number of accommodation requests made that month,

2. The number of days taken to resolve each request,

3. The decision to provide or deny the requested accommodation, and (if applicable) to offer an alternative accommodation,

4. The number of ADA grievances made that month,

5. The number of days to resolve each grievance, and

6. Resolution of the grievance.

91. In addition to the reporting required by the Court's prior Order, ECF 161, Defendant shall provide the following to the Court on a quarterly basis. Reporting shall commence the month following the signing of this Order.

a) Any new or pending legislative requests for new staff and/or technology upgrades, the content of those requests, and updates as to the progress of those requests; and

b) The results of the staffing assessment described in paragraph 44, and any steps taken to meet the staffing needs assessed.

92. Defendant shall meet the following Performance Metrics:

a) The Tier 3 Inbound Queue monthly average speed to answer must be at or below twenty (20) minutes.

b) The Tier 3 Inbound Queue monthly deflection rate must be at or below 5%.

c) The Tier 3 Inbound Queue monthly average abandonment rate must be at or below 15%.

d) The monthly percentage of denials for failure to interview must be at or below 15%, calculated by dividing the number of denials for failure to interview by the total number of applications.

e) Face-to-face interviews at Resource Center shall be provided on the same day as the request, or within five days 95% of the time (measured on a monthly basis).

f) Paper applications shall be mailed within one business day of DSS receiving the request no less than 95% of the time.

Training and Implementation of Order Requirements

93. Within three months of the entry of this Order, DSS shall create additional training materials instructing staff on recognizing and granting accommodations. Staff shall be required to receive the training upon hire and on at least an annual basis thereafter.

27

94. Within three months of the entry of this Order, Defendant shall include additional training on recognizing and granting accommodation requests in DSS's annual USDA Civil Rights training.

95. Defendant shall update ADA training materials as needed, based on the review of filed grievances described in paragraph 87.

96. Within 3 months of the entry of this Order, Defendant shall update training materials for new staff, to reflect the changes to SNAP administration required by this Order.

97. Within one month of the entry of this Order, Defendant shall inform existing staff of changes to SNAP administration required by this Order.

98. No less than six weeks prior to implementation, Defendant shall provide all new and revised training materials required by this Order, or implicating the terms of this Order, to Plaintiffs. Defendant shall meet and confer with Plaintiffs no less than three weeks prior to implementation of such trainings, and shall respond promptly to any concerns regarding the content or sufficiency of such trainings. Plaintiffs shall alert the Court in the event that they believe Defendant implements or plans to implement trainings that violate this Order.

99. Defendant shall commence providing new and amended trainings to DSS staff within three weeks of the materials being finalized.

100. Unless otherwise provided elsewhere in this Order, all notices, policies, and documents must be revised in line with this Order within 14 days of the signing of this Order.

## II.    GENERAL PROVISIONS

101. If changes to any policies, procedures, practices, or documents required by this Order are required by changes in federal statutes or regulations, state statutes or regulations, new USDA guidance, the withdrawal of existing USDA guidance, or USDA's modification of

existing guidance, then Defendant shall notify Plaintiffs' counsel within seven days of becoming aware that a change will be necessary. Defendant shall meet and confer with Plaintiffs before any changes to policies, procedures, practices, or documents are finalized and/or implemented, and final versions must be provided to Plaintiffs' counsel no fewer than thirty (30) days before implementation. In the event that FNS imposes an implementation timeline on Defendant that does not allow sufficient time for a meet and confer prior to implementation or for the 30 days notice, Defendant shall provide final versions of policies, procedures, practices, or documents required by this Order and meet and confer with Plaintiffs as soon as practicable.

102.    Should Defendant wish to revise any policies, procedures, practices, or documents governed or required by this Order, they may only do so after a meet and confer with Plaintiffs' counsel, and final versions must be provided to Plaintiffs' counsel no fewer than thirty (30) days before implementation.

103.    If Plaintiffs determine that, following the revision process described in paragraphs 101-102, a new version of policies, procedures, practices, or documents required by this Order: (a) is not required by statute, regulation, or guidance; (b) does not sufficiently preserve the content and effect of this Order; or (c) otherwise undermines this Order; Plaintiffs may challenge the new version by motion to this Court.

104.    Unless otherwise set forth herein, the terms and conditions of this Order shall become effective upon the date of entry of the signed Order by the Court.

III.    **JURISDICTION**

105.    The Court shall retain jurisdiction over this matter until Defendant has met all of the Performance Metrics in paragraph 92 for no less than twelve consecutive months.

106.    Upon meeting all of the Performance Metrics in paragraph 92 for no less than twelve consecutive months, Defendant may make a Motion to this Court requesting termination of jurisdiction.

107.    Plaintiffs may oppose Defendant's Motion requesting termination of jurisdiction via a memorandum filed within 14 days of Defendant's Motion.

## IV.    ENFORCEMENT AND INFORMAL DISPUTE RESOLUTION

108.    Plaintiffs may, upon motion to this Court, allege noncompliance with this Order and move to enforce the Order. Prior to bringing any such motion, Plaintiffs shall serve written notice on Defendant of any claim of non-compliance. Defendant shall have thirty (30) days from the date of service of the written notice of non-compliance to respond to the claim of non-compliance. Within that thirty (30) day period, the parties shall meet and confer regarding the claimed non-compliance. If, at the end of thirty (30) days from service of the written notice of non-compliance, the claim of non-compliance remains unresolved, Plaintiffs may file a Motion to Enforce this Order with this Court. The time periods set forth in this paragraph may be extended only by mutual written agreement of the parties.

## V.    ATTORNEYS FEES AND COSTS

109.    Plaintiffs shall file any motion for fees and costs pursuant to 42 U.S.C. § 1988 within sixty (60) days of the Court signing this Order. Defendant may contest Plaintiffs' entitlement to fees and costs.

110.    Plaintiffs may submit motions for fees for work performed in this matter after the signing of this Order, to the extent permitted by law. Defendant may contest any such motion.