IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MARY HOLMES, *et al.*,<br><br>                                            Plaintiffs,<br><br>                                         -*against*-<br><br>JESSICA BAX, in her official capacity as Director of the Missouri Department of Social Services,<br><br>                                              Defendant. | No. 2:22-CV-04026-MDH |

**ORDER**

      On February 22, 2022, Plaintiffs filed their complaint alleging that Defendant, as the administrative agency charged with administering the Supplemental Nutrition Assistance Program ("SNAP"), has failed, and continues to fail, to administer the program so as to provide "timely, accurate and fair service to applicants and participants" as required by federal law. Plaintiffs further allege that Defendant fails to comply with the Americans with Disabilities Act ("ADA") in its administration of the SNAP program.

      In the Court's May 9, 2024, Order (Doc. 161) the Court entered summary judgment in favor of Plaintiffs and held that Defendant's administration of the SNAP program failed to adhere to Defendant's obligations under federal law and that Defendant's administration of the program was not in compliance with the ADA. The Court afforded each of the parties the opportunity to suggest appropriate remedial steps to bring Defendant into compliance with the administration of the SNAP program.

1

Specifically, the Court ordered Plaintiffs to submit a report detailing the specific changes they contend are required to make Defendant's administration of SNAP benefits lawful and ADA compliant. Defendant was required to respond to Plaintiffs' report and identify: 1) the resources, including time necessary, to effectuate each proposed change; 2) the barriers that currently stand in the way of Defendant effectuating the change; and 3) the metrics that would most effectively capture any effort on the part of Defendant to effectuate the change. It was further ordered that Defendant submit a proposed plan of action, including a timeline of implementation, to address shortcomings in the administration of SNAP as identified in the Court's Order, including a reduction of call wait times and denials based solely on failure to interview, and its compliance with the requirements of the ADA.

Pursuant to the Order, Defendant has been filing monthly reports regarding: 1) the number of SNAP applications denied due to the failure to conduct timely interviews; 2) the percentage of denials based on the failure to complete timely interviews; 3) the low, high, and average wait times for callers under Tier 1 and Tier 3; 4) the number of calls which were deflected or redirected daily; 5) the number of calls that are disconnected by the caller prior to connecting with a representative, including the average wait times prior to disconnection; and 6) the number of applicants who requested accommodations under the ADA.

On August 29, 2024, the parties jointly requested a stay of the proceedings and requested that the case be referred to mediation. (Doc. 185). The Court granted the request. However, on February 14, 2025, the parties advised the Court that settlement discussions had irretrievably broken down. The Court then afforded the parties an additional opportunity to brief any proposed remedial actions.

On March 10, 2025, the Court held a hearing on the parties' proposals and recommendations submitted pursuant to the Court's summary judgment order. The Court has reviewed the record before it, including the parties' submissions, Defendant's monthly reports, and the oral argument presented during the hearing.

While the Court's initial summary judgment order was based largely on the parties' submissions at that time, using data from 2023, the subsequent monthly reports filed by Defendant demonstrate no progress in addressing the issues described in detail in the Court's May 9, 2024 Order. For example, in March 2025, the average wait time on the Tier 1 phone system was 1 hour 2 minutes and 13 seconds.[1] The highest average wait time was 1 hour 20 minutes and the maximum wait time was 4 hours 46 minutes and 25 seconds. There were 15,990 queue deflections and 12,799 customer disconnects following an average wait time of 28 minutes and 36 seconds.

On the Tier 3 system the average wait time was 49 minutes and 37 seconds. The highest average wait time was 1 hour and 6 minutes and 59 seconds and the maximum wait time was 6 hours 3 minutes and 55 seconds. There were 50,488 queue deflections and 15,896 customer disconnects after an average wait time of 37 minutes and 11 seconds. Finally, a shocking 48.22% of SNAP applications were rejected solely for failure to complete the interview and not based on any other qualifying factor. Defendant has failed to identify a single program change or resource reallocation to address the issues raised initially in the Complaint and subsequently in the Court's summary judgment order.

At the March 10, 2025 hearing, Defendant reported that it was working on an ADA policy. However, Defendant has not yet adopted an ADA policy, it has not provided any draft of an ADA

---

[1] Defendant's phone system, including the two tiers, Tier 1 and Tier 3, is more fully explained in the Court's summary judgment order. (Doc. 161).

policy for review, and it has suggested no other changes to its policy, or lack thereof, since the lawsuit was filed or since the Court's summary judgment order.

In addition, Defendant reported that while additional resources have been requested during the State's budgetary process, no additional staff or technological investments have yet been approved. The Court specifically requested in its Order (Doc. 211) that representatives of the Governor's office, the Department of Social Services ("DSS"), and the House and Senate appropriations and budget committees be present for the hearing. The Court reminded counsel of this during the hearing. While a representative from the Governor's office attended the hearing, Defendant apparently chose to ignore the Court's request and failed to advise representatives of the House and Senate appropriations and budget committees of the hearing and the Court's request for attendance. The Court finds the failure to advise these committees of the Court's request to be suspect when Defendant is allegedly seeking and needing additional resources.

With regard to potential remedies, the parties have submitted wildly divergent approaches on how to address the SNAP administration issues. Plaintiffs provide a comprehensive list of specific policy changes addressing both the administrative shortcomings of the Defendant's administration of SNAP and to address the Defendant's obligations in administering the program in compliance with the ADA. Defendant argues that Plaintiffs' proposal would result in Court micromanagement and would exceed the proper exercise of the Court's injunctive powers. However, Defendant did not contest that the proposed changes and administration of the program as proposed by Plaintiffs would improve the administration of the SNAP program or that it would enhance the timely, accurate and fair service to applicants and participants.

Defendant's remedial proposal is fairly described as "trust us we are doing the best that we can with currently available resources." While Defendant expresses a willingness to make certain

changes to the administration of SNAP, pursue additional resources, and adopt an ADA policy, Defendant argues it does not have the resources to do so. This is true even though the federal government pays 100% of the benefits due under the SNAP program and 50% of any administrative expenses the Defendant incurs in administering the program.

This Court intends to require Defendant to comply with its obligations as clearly set out under federal law and as required by the ADA in its administration of the SNAP program. These obligations are detailed in the Court's May 9, 2024, Order. The requirements are designed to assure that food challenged Missourians are allowed to fairly participate in SNAP. Defendant's "promises" that it is doing the best it can in its administration of SNAP and in its compliance with ADA are both too little and too late to be credible. The current efforts do not fulfill Defendant's responsibilities under federal law. Defendant has been aware and on notice of the significant issues in the administration of the SNAP program since at least the time this lawsuit was filed, and as emphasized in the Court's summary judgment order, yet no significant improvement in the administration of SNAP has occurred. The excessive call wait times and denials based on the failure to provide a reasonable opportunity to interview persist and in some respects have deteriorated. Defendant has had multiple opportunities to seek additional resources or make administrative or technological changes, yet thus far none have been forthcoming.

Consequently, Missourians who are eligible for SNAP benefits have continued to endure wholly unacceptable bureaucratic telephone wait times and benefit denials solely because of the inadequacy of the system. In short, food challenged Missourians who clearly qualify for SNAP benefits have gone hungry due to Defendant's deficiencies in administering the program.

As a result, the Court adopts minimal benchmarks for administration of the SNAP program which the Defendant shall be required to reach. Defendant is hereby **ORDERED** to take whatever

steps are necessary to reduce the average wait time for Tier 1 and Tier 3 callers so that 90% of callers have no more than a 20 minute wait time. This wait time is far more flexible than the goal private call centers have, according to Defendant's own briefing, of answering 80% of calls within 2 minutes. Defendant is further **ORDERED** to take whatever steps are necessary to bring the number of applications which are rejected for failure to interview to no more than 20% of all applications.

Defendant shall begin implementing changes to advance these benchmarks as more fully set forth herein within 60 days and shall make substantial progress toward these benchmarks within 6 months of this Order. The monthly reports that were previously ordered in the Court's summary judgment order (Doc. 161) shall continue to be filed and distributed in accordance with that Order. The reports shall now also specifically include an itemization of changes in program administration to address the benchmarks established in this Order. If substantial progress toward the benchmarks set forth in this Order are not demonstrated within a six-month period from the date of this Order, the Court will consider more specific and extensive remedial changes in the administration of the SNAP program.

To assist in facilitating progress toward these benchmarks, the Court **ORDERS** efforts to implement the following begin immediately with completion no later than 60 days:

SNAP RIGHT TO FILE

1. Defendant shall continue to provide an option to complete and submit a SNAP application online and to complete and submit a SNAP application on a mobile device.
2. Defendant shall allow individuals to request via phone that a paper application be sent to them via U.S. mail. Defendant shall implement an automated Interactive Voice Response system ("IVR") menu option, through which individuals can request a paper application be

mailed to them without speaking to a DSS worker, and without waiting on hold at any point (either before or while making the paper application request).

3. Defendant shall make the IVR option discussed in paragraph 2 available to all callers, without the requirement to enter a Social Security Number or Department Case Number ("DCN") until after the menu option has been selected.

4. Defendant shall ensure that the IVR option discussed in paragraph 2 informs callers they may apply for SNAP online, and provides the website address for the online SNAP application.

5. Defendant shall allow individuals to request online that a paper application be sent to them via U.S. mail. Defendant shall develop an online request form for this purpose. Defendant shall make the online request form available on Defendant's website.

6. Defendant shall promptly mail all requested paper SNAP application forms.

WRONGFUL DENIALS

7. Defendant shall not deny applications for failure to interview when the applicant has made reasonable attempts to complete their interview between the filing of the SNAP application and the relevant processing deadline. For the purposes of this Order, "reasonable attempts to interview" means that an applicant:

    a. Has called into the Tier 3 Inbound Line on more than one occasion, and was deflected; or

    b. Has called into the Tier 3 Inbound Line on two occasions, and entered the Tier 3 Inbound Queue on those two occasions and has been on hold for more than 15 minutes each time; or

7

    c. Has visited a Resource Center, and had the visit logged in Current after submitting a SNAP application but before completing an interview; or

    d. Has scheduled an interview appointment, either face-to-face or telephonic.

8. Defendant shall place at least one outbound call to attempt to interview each SNAP applicant household not entitled to expedited processing.

9. Defendant shall place at least two outbound calls to attempt to interview each SNAP application household that screens eligibility for expedited processing.

10. Prior to placing outbound interview calls, Defendant shall send a text message to the phone number on the SNAP application notifying the applicant that a SNAP eligibility worker will be contacting them within the next day, and encouraging the applicant to answer the call and complete their SNAP interview.

11. Defendant shall inform SNAP applicants who apply in person at Resource Centers that they have the option to interview on the same day they submit their application.

12. When an applicant makes a request in person at a Resource Center for a face-to-face interview, Defendant shall follow the following procedures:

    a. Provide the applicant with a face-to-face interview on the same day of their request, except when staff availability does not allow.

    b. If staff availability does not allow for a face-to-face interview the same day as the request, provide the applicant with an appointment for a face-to-face interview scheduled within the following five days.

    c. If staff availability does not allow for a face-to-face interview the same day as the request and the applicant cannot return to the Resource Center within the next five

days, provide the applicant with a face-to-face interview appointment at a date and time convenient to the applicant, and within 30 days of the date of their application.

   d. Defendant shall only divert an applicant who has requested a face-to-face appointment to a telephone interview appointment—whether in the Resource Center or via a telephone—with the applicant's consent.

13. Defendant shall send a notice to applicants within one business day of the submission of a SNAP application informing them of the interview requirement and the ways in which an interview can be completed. This notice should also inform applicants to expect the Predictive Dialer call.

14. Defendant shall send a notice five days after the submission of a SNAP application, if the applicant has not completed an interview by that date. This notice shall remind the applicant of the various ways in which an interview can be completed, including the option to have a face-to-face interview at a Resource Center, and the option to schedule a telephone or face-to-face interview.

15. Defendant shall offer callers to the Tier 3 Inbound Line the opportunity to schedule a telephone or face-to-face interview:

   a. When they reach the Tier 3 Inbound Queue;
   b. When they are deflected or redirected from the Tier 3 Inbound Queue; and
   c. When they have waited on hold for more than twenty minutes.

16. Defendant shall schedule interview appointments for applicants prior to the thirtieth day after their application was submitted. If an appointment prior to the thirtieth day is not available, then Defendant shall give the applicant the soonest available appointment.

17. When an applicant has an interview scheduled for more than thirty days after their application was submitted, Defendant shall not deny the application for failure to interview prior to the scheduled appointment. As an eligibility determination cannot be made until after the interview is completed, Defendant may encourage applicants with scheduled interviews to continue to try other methods of completing an interview.

18. Defendant shall allow applicants who complete interviews sufficient time, not less than 10 calendar days after their interview, to submit any verifications, as required by 7 C.F.R. § 273.2(f). Defendant shall comply with this provision even when the interview is completed after the processing deadline.

19. Defendant shall ensure SNAP notices sent to applicants who have not completed an interview, including notices sent related to SNAP recertifications, clearly inform SNAP applicants that they can complete an interview by:

    a. Answering calls from Defendant placed within three days of application submission and/or sixteen days after application submission;

    b. Calling the Call Center during business hours;

    c. Going to their local Resource Center during the Resource Center's business hours; and

    d. Scheduling a phone interview by calling into the Call Center and selecting the appropriate menu option or using the online scheduler.

20. Defendant shall conduct ongoing efforts to recruit, train, and retain staff, to ensure Defendant employs sufficient staff to provide meaningful access to SNAP interviews, and to meet other agency obligations.

21. On a quarterly basis, Defendant shall assess the number of Call Center staff needed to achieve the Performance Metrics described in this Order, and shall take all practicable steps to assign such staff to the Tier 3 Inbound Queue and the Tier 3 Outbound Queue.

AMERICANS WITH DISABILITIES ACT

22. Within 60 days Defendant shall develop an ADA Policy that ensures the SNAP program is administered in compliance with the ADA.

23. Defendant shall submit a copy of the ADA policy to Plaintiffs and the Court.

DATA AND REPORTING

24. For the duration of the Court's jurisdiction over this action, Defendant shall comply with all monthly reporting obligations required by the Court's prior Order, Doc. 161.

25. Defendant shall provide the Court with a monthly Paper Applications Request Report, which shall include:

    a. The total number of paper SNAP applications requested in the previous month, broken down by means of request; and

    b. The total number of paper SNAP applications mailed more than one business day of the request and those mailed more than a week after the request in the previous month, broken down by means of request.

26. Defendant shall provide the Court with a monthly Interview Request Report, which shall include:

    a. The total number of interviews requested via the appointment scheduler; and

    b. The number of appointment requests that were not scheduled for a date before the relevant processing deadline.

## JURISDICTION

27. Upon meeting all of the performance benchmarks set forth in this Order for more than twelve consecutive months, Defendant may make a Motion to this Court requesting termination of jurisdiction.

## ATTORNEYS FEES AND COSTS

28. Plaintiffs shall file any motion for fees and costs pursuant to 42 U.S.C. § 1988 within sixty (60) days of the Court signing this Order. Defendant may contest Plaintiffs' entitlement to fees and costs.

**IT IS SO ORDERED.**

Date: May 6, 2025

          /s/ **Douglas Harpool**
DOUGLAS HARPOOL
UNITED STATES DISTRICT JUDGE