UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MARY HOLMES, DENISE DAVIS, ANDREW DALLAS, and EMPOWER MISSOURI,<br><br>                      Plaintiffs,<br><br>        *-against-*<br><br>ROBERT KNODELL, in his official capacity as Director of the Missouri Department of Social Services,<br><br>                      Defendant. | Case No. 2:22-cv-04026-MDH<br><br>**SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES AND COSTS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................... ii

PROCEDURAL AND FACTUAL HISTORY............................................................................. 1

ARGUMENT............................................................................................................................... 4

    I.      PLAINTIFFS ARE PREVAILING PARTIES .................................................................. 4

    II.    PLAINTIFFS SEEK FEES FOR A REASONABLE NUMBER OF HOURS AT
    REASONABLE HOURLY RATES....................................................................................... 5

        A.   Plaintiffs Seek Reasonable Hourly Rates .......................................................... 5

        B.   Plaintiffs Seek Fees for a Reasonable Number of Hours and Have Exercised
        Reasonable Billing Judgment ............................................................................ 10

        C.   Defendant's Tactics Greatly Increased the Number of Hours Plaintiffs Spent on This
        Litigation................................................................................................................ 12

    III.   PLAINTIFFS' SUCCESS JUSTIFIES A FULLY COMPENSATORY FEE AWARD  13

    IV.   PLAINTIFFS SEEK REASONABLE COSTS .......................................................... 13

CONCLUSION.......................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 2013 WL 4855304 (E.D. Mo. Sept. 11, 2013) .................................................................................................................. 8

*Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876 (8th Cir. 1977) ........................... 6

*Avalon Cinema Corp. v. Thompson*, 689 F.2d 137 (8th Cir. 1982) ........................................... 5, 6

*Barrett v. Claycomb* , 2013 WL 6920860 (W.D. Mo. Dec. 9, 2013) ........................................... 14

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) .............................................................................. 5

*Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................................................... 5

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598 (2001) ...................................................................................................................... 4

*Cooper v. Scripps Media, Inc.*, 2019 WL 2617822 (W.D. Mo. June 26, 2019) ........................... 10

*Coral Grp., Inc. v. Shell Oil Co.*, 2013 WL 4067625 (W.D. Mo. Aug. 12, 2013) ........................ 13

*Emery v. Hunt*, 272 F.3d 1042 (8th Cir. 2001) .......................................................................... 14

*Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573 (8th Cir. 2014) .......................................... 4

*Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969 (8th Cir. 2016) ...................................... 5

*Gerling v. Waite*, 2022 WL 558083 (E.D. Mo. Feb. 24, 2022) ................................................. 8, 9

*Hardman v. Bd. of Educ. of Dollarway*, 714 F.2d 823 (8th Cir. 1983) ........................................ 6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................ 12, 13

*Hiltibran v. Levy*, 2011 WL 5008018 (W.D. Mo. Oct. 20, 2011) .............................................. 12

*Jenkins ex rel. Jenkins v. State of Mo.*, 127 F.3d 709 (8th Cir. 1997) ........................................ 13

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ..................................... 5, 10

*M.B. by Eggemeyer v. Tidball*, 18 F.4th 565 (8th Cir. 2021) ...................................................... 7

*M.B. v. Tidball*, 2020 WL 1666159 (W.D. Mo. Apr. 3, 2020) ....................................... 7, 8, 9, 13

ii

*McKeage v. Bass Pro Outdoor World, L.L.C.*, 2018 WL 10648681 (W.D. Mo. Nov. 8, 2018) 9, 13

*Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968)...................................................... 13

*Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198 (W.D. Mo. Mar. 14, 2017) ........................ 7

*Riverside v. Rivera*, 477 U.S. 561 (1986)...................................................................................... 12

*Romero v. Smithfield Foods, Inc.*, 2021 WL 12311027 (W.D. Mo. July 13, 2021) ........................ 9

*S.C. by and through M.C. v. Riverview Gardens Sch. Dist.*, 2020 WL 5262267 (W.D. Mo. Sept. 3, 2020) ........................................................................................................................................ 7, 8, 9

*S.C., et al., v. Riverview Gardens Sch. Dist., et al.*, 2020 WL 5262267 (W.D. Mo, Sept. 3, 2020) ...................................................................................................................................................... 12

*Toigo v. Dep't of Health & Senior Servs.*, 2022 WL 212413 (W.D. Mo. Jan. 24, 2022)................ 8

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 2018 WL 5848994 (W.D. Mo. Nov. 7, 2018) ........................................................................................................................................... 8

*Washington v. Denney*, 2017 WL 4399566 (W.D. Mo. Oct. 3, 2017).......................................... 14

**Statutes**

42 U.S.C. § 1983.......................................................................................................................... 4

42 U.S.C. § 1988.................................................................................................................. 1, 4, 14

Since filing this action over three years ago, Plaintiffs have pursued significant, systemic reform of Missouri's SNAP eligibility process. Defendant opposed Plaintiffs' efforts at every turn. Plaintiffs prevailed on all their claims at Summary Judgment and have now obtained complete and significant relief. Because of Plaintiffs' efforts, hundreds of thousands of Missourians who rely on SNAP are closer to enjoying more effective and efficient access to their benefits. As prevailing parties, Plaintiffs now seek an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## PROCEDURAL AND FACTUAL HISTORY

This case was filed on February 22, 2022. Right away, Plaintiffs filed a Motion for Temporary Restraining Order requesting that Defendant immediately conduct interviews and provide correct determinations on Plaintiff Holmes' and former Plaintiff L.V.'s SNAP applications. Defendant did not comply fully with this request, requiring Plaintiffs to prepare for and argue the Motion. Deabler-Meadows Decl. ¶ 16. At the TRO hearing, the parties also agreed to an individual relief process to ensure applicants who contacted Plaintiffs' counsel could get SNAP interviews without joining the litigation.[1] *Id.* ¶ 17. After reaching that agreement, however, Defendant proceeded to demand unnecessary paperwork before providing interviews to other applicants—forcing further briefing and court appearances to get a functional process in place. *See* ECF 46, 47, 50; Deabler-Meadows Decl. ¶¶ 18.

From there, Defendant chose to file a Motion to Dismiss, which—while within their rights—required additional work on the part of Plaintiffs. Deabler-Meadows Decl. ¶ 19.

---

[1] Since the initiation of this process in March 2022, Plaintiffs' counsel has notified Defendant of 165 applicants who faced illegal barriers to accessing the interview required to complete eligibility process. Defendant then promptly scheduled interviews for these individuals.

1

Plaintiffs defended against Defendant's Motion to Dismiss successfully. *See* ECF 33, 34, 35, 35-1, 38, 49. After that, extensive discovery was conducted. Deabler-Meadows Decl. ¶¶ 20-28.

During discovery, Defendant caused significant extra work and delays. *Id*. ¶¶ 22-28. Search term negotiations alone took more than six months. *Id*. ¶ 23. Obtaining production of documents from Defendant involved multiple meet and confers between the parties and conferences with the Court. *See* ECF 55, 74, 92, 130; Deabler-Meadows Decl. ¶ 25. Defendant did not communicate effectively regarding search terms, custodians, or production schedules, requiring Plaintiffs to frequently follow up via email to keep the discovery process moving. Deabler-Meadows Decl. ¶ 24. Defendant's failure to conduct discovery efficiently and produce documents timely necessitated court intervention. ECF 91; Deabler-Meadows Decl. ¶ 25. Depositions revealed that documents had been withheld improperly, requiring additional follow-up. ECF 118; Deabler-Meadows Decl. ¶ 26. Even with Plaintiff's pursuing discovery diligently, the parties required four separate extensions from the Court to complete discovery. *See* ECF 65, 80, 108, 115.

In addition to dealing with Defendant's discovery conduct, Plaintiffs had to manage the scope of discovery. Plaintiffs were forced to help Defendant understand their own database and search term strategies to reduce the scope of material provided. *Id*. ¶ 24. Ultimately, Defendant produced 23,788 records. Deabler-Meadows Decl. ¶ 20. Plaintiffs' counsel had to review and assess Defendant's massive production and address many deficiencies. In addition, Plaintiffs took 10 depositions, including a 30(b)(6) deposition that stretched over two days. *Id*. ¶ 21.

Following discovery, the parties filed cross-Motions for Summary Judgment. This Court awarded Summary Judgment to Plaintiffs on all counts. *See* ECF 138-155, 161. The Court found:

- Defendant's policy of requiring phone applicants to navigate a dysfunctional call center violated the SNAP Act, ECF 161 at 37-38;

- Defendant's policy of denying applications for failure to interview—with no regard for whether SNAP applicants had attempted to interview, and when Defendant's systems imposed insurmountable barriers—violated the SNAP Act and the Due Process Clause, *id*.; and

- Defendant's failure to provide a functional process for requesting and receiving a reasonable accommodation violated the ADA, *id*.

In addition, the Summary Judgment Order required Defendant to report certain metrics to the Court on a monthly basis. *Id*. at 39.

Following the Summary Judgment Order, Defendant created additional work with an ill-advised and improper appeal attempt. Defendant requested leave for an interlocutory appeal in the district court *and* prematurely filed a notice of appeal to the Eighth Circuit, at the same time. ECF 165, 166; Deabler-Meadows Decl. ¶¶ 31-32. Plaintiffs were forced to make sense of the contradictory filings and contacted Defendant to ask that they withdraw these inapt filings. Deabler-Meadows Decl. ¶ 33. When Defendant refused, Plaintiffs had to oppose *both* appeal attempts. ECF 170; Appellate Case 25-1987, Entry ID 5406592; Deabler-Meadows Decl. ¶¶ 34-35. After all that, Defendant chose not to pursue either appeal attempt, failing to reply to Plaintiffs' opposition to the certification of an interlocutory appeal and failing to respond to Plaintiffs' dismissal motion in the appellate court. Deabler-Meadows Decl. ¶¶ 34-35. The Eighth Circuit dismissed the premature appeal and returned jurisdiction to this Court, which promptly denied the request for an interlocutory appeal. ECF 173, 178.

After the courts disposed of Defendant's appeal attempts, the parties agreed to a stay to attempt to negotiate the nature and scope of relief. Deabler-Meadows Decl. ¶ 37.[2] The parties spent five months negotiating, with numerous meetings, and multiple attorneys to ensure appropriate expertise was available. *Id*. ¶¶ 38-39. Additionally, Plaintiffs' counsel took on the

---

[2] In the Summary Judgment Order, the Court set forth a process for determining the details of injunctive relief. *See* ECF 161 at 40; Deabler-Meadows Decl. ¶ 29.

lion's share of the work related to these negotiations, including scheduling meetings, planning agenda, summarizing meetings and sending follow-up action items, and drafting of the potential relief order and other related documents. *Id*. ¶¶ 40. The parties realized settlement discussions would not result in a negotiated relief order. *Id*. ¶ 41, and the Court ordered the parties to submit relief proposals. ECF 211. On March 10, the Court conducted a hearing, for which Plaintiffs spent significant time preparing. *See id.*

On May 6, 2025, this Court issued an order providing Plaintiffs with complete relief. ECF 220. The relief order requires meaningful, systemic changes. Defendant must cease denying SNAP applications for failure to interview when applicants have attempted to interview; ensure SNAP application forms can be requested and sent within one business day of a request; implement a legally compliant ADA policy; take a variety of additional steps to increase interview access and reduce the number of applicants who are unable to access their interviews; report to the Court on their progress; and meet certain key numerical benchmarks. *Id*.

**ARGUMENT**

## I.   PLAINTIFFS ARE PREVAILING PARTIES

42 U.S.C. § 1988 allows a prevailing party to seek "reasonable attorney's fees" in an action or proceeding to enforce a plaintiff's rights under several civil rights statutes, including 42 U.S.C. § 1983. A "prevailing party" is one that obtains a judicially sanctioned, material alteration of the legal relationship of the parties. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 603-4 (2001); *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014).

Without question, Plaintiffs are prevailing parties here. Plaintiffs won a full Summary Judgment, on all claims and as to all Plaintiffs. ECF 161. Additionally, the Court's order on relief requires Defendant to undertake significant, meaningful changes to the policies and

4

practices at the heart of this litigation. *See* ECF 220. Simply put, Plaintiffs succeeded on every claim. They achieved the relief sought. Plaintiffs are prevailing parties entitled to attorneys' fees.

## II.     PLAINTIFFS SEEK FEES FOR A REASONABLE NUMBER OF HOURS AT REASONABLE HOURLY RATES

Plaintiffs seek attorneys' fees in the amount of $2,728,998.30 for the time spent on this litigation from April 2021 through May 6, 2025, the date of this Court's relief order. Plaintiffs calculated the amount of fees requested pursuant to the lodestar number, which consists of multiplying "the number of hours reasonably expended on the litigation . . . [by] a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (citation omitted); *Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 972 (8th Cir. 2016); *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 139 (8th Cir. 1982).

### A.  Plaintiffs Seek Reasonable Hourly Rates

Plaintiffs request reasonable hourly rates for the attorneys and paraprofessionals who worked on this litigation. A reasonable hourly rate is generally understood to be "the ordinary fee 'for similar work in the community.'" *Avalon*, 689 F.2d at 140 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)). Courts have determined a reasonable rate by the "prevailing market rates in the relevant community" whether or not plaintiff is represented by a private or nonprofit group. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

In determining a "presumptively reasonable rate," a court may consider, beyond the lodestar calculation, any of the twelve factors in *Johnson* (488 F.2d 714), including the time and labor required, the results obtained for the client, the attorney's customary rate, the attorney's experience and ability, and awards in similar cases. *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876, 884 (8th Cir. 1977); *Hardman v. Bd. of Educ. of Dollarway*, 714 F.2d 823, 825 (8th Cir. 1983) (per curiam) (noting that "this court has adopted the guidelines for

5

determining attorneys' fees set forth" in *Johnson*). If the *Johnson* factors lead to a change in the lodestar figure, it will usually result in an increase. *Avalon*, 689 F.2d at 140.

Plaintiffs' counsel are experts with considerable experience and specialized knowledge of public benefits litigation. As set forth in the accompanying declarations, Plaintiffs seek rates comparable to those prevailing in the local community for attorneys of commensurate experience and expertise.

For the National Center for Law and Economic Justice (NCLEJ), Plaintiffs request the following hourly rates:

- $325 for Katharine Deabler-Meadows, a Staff Attorney with 10 years' experience litigating civil rights and public benefits matters, Deabler-Meadows Decl. ¶¶ 4-9; Deabler-Meadows Ex. A, Ex. D;

- $420 for Saima Akhtar, a Senior Attorney with 17 years' experience litigating civil rights and public benefits matters, and Claudia Wilner, NCLEJ's Litigation Director with 23 years' experience, Deabler-Meadows Ex. A, Ex. D;

- $600 for Gregory Bass, a Senior Attorney with more than forty years' experience, *id.*;

- $270 for junior attorneys Sara Lunden, Susannah Howe, and Jordan Berger, all of whom had three years of experience or less at the time they worked on the case, *id.*; and

- Plaintiffs also request an hourly rate of $150 for NCLEJ law interns who worked on the litigation, *id.*

For Legal Services of Eastern Missouri (LSEM), Plaintiffs request the following hourly rates:

- $450 for Lisa D'Souza, LSEM's Hon. Richard B. Teitelman Chair and an attorney with 29 years' experience, D'Souza Decl. ¶¶ 2-8;

- $390 for Jamie Rodriguez, the manager of LSEM's Health and Welfare Unit and an attorney with 15 years' experience and for Katherine Holley, Director of LSEM's Public Benefits Program and an attorney with 12 years' experience, *id.* ¶¶ 15-28;

- $600 for Joel Ferber, LSEM's Director of Advocacy and an attorney with 40 years' experience, and particular expertise in Missouri public benefits programs, *id.* ¶¶ 9-14;

- $270 for Aliyah Salame, an attorney who had three years' experience or less when she worked on this litigation, *id.* ¶¶ 29-31; and

- $200 for Leslie Calandro, a paralegal who earned a J.D., has worked as a licensed lawyer, and has worked at LSEM for more than seven years, *id.* ¶¶ 32-35.

For Stinson, LLP, Plaintiffs request the following hourly rates:

- $450-600 for Andrew Scavotto, a Partner with 20 years' experience, Scavotto Decl. ¶¶ 5; Scavotto Ex, 1;

- $445-635 for J. Nicci Warr, a Partner with 18 years' experience, *id*. ¶¶ 5; Scavotto Ex. 2;

- $310-465 for associate attorneys, a variety of whom performed various tasks, *id*. ¶¶ 5; Scavotto Ex. 3; and

- $250-280 for practice support professionals, who were needed to collect, store, manage, and review the massive amounts of ESI produced by Defendant, *id*. ¶¶ 5.

The requested NCLEJ and LSEM hourly rates of $600 for 30+-year Attorneys and $450 for 20–30-year Attorneys are in line with rates awarded in previous cases for senior attorneys with similar experience. *M.B. v. Tidball*, No. 2:17-CV-4102-NKL, 2020 WL 1666159, at *10 (W.D. Mo. Apr. 3, 2020), *aff'd sub nom.*, *M.B. by Eggemeyer v. Tidball*, 18 F.4th 565 (8th Cir. 2021) ($500 per hour for attorneys with more than 30 years of experience, in 2020); *S.C. by and through M.C. v. Riverview Gardens Sch. Dist.*, No. 18-4162-CV-C-NKL, 2020 WL 5262267, at *9 (W.D. Mo. Sept. 3, 2020) (approving rates as high as $600 for counsel with over 40 years of experience); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 222 (W.D. Mo. Mar. 14, 2017) (finding class counsel fees as high as $897 reasonable, because they were "not dissimilar to those hourly rates charged in the Kansas City area," and rates reflected counsel's experience and skill); *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:11CV01691 AGF, 2013 WL 4855304, at *8 (E.D. Mo. Sept. 11, 2013) (concluding that $500 per hour was

7

reasonable for lead counsel from each firm); *Gerling v. Waite*, No. 4:17-CV-02702 JAR, 2022 WL 558083, at \*2 (E.D. Mo. Feb. 24, 2022) (approving rates up to $595 per hour for partners with decades of experience).

The requested NCLEJ and LSEM hourly rates of $420 for 15-20-year Attorneys and $390 for 10-15-year Attorneys are also in line with rates awarded in previous cases for senior attorneys with similar experience. *Tidball*, 2020 WL 1666159, at \*11 (finding $350 per hour reasonable for attorneys with 10 years of experience in 2020); *S.C. by and through M.C.*, 2020 WL 5262267, at \*8 (approving an hourly rate of $350 for attorney with 12 years of experience); *Toigo v. Dep't of Health & Senior Servs.*, No. 20-4243-CV-C-NKL, 2022 WL 212413, at \*3 (W.D. Mo. Jan. 24, 2022) ($325 per hour determined to be reasonable for attorney with 10 years of experience practicing civil rights law); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, No. 2:13-cv-4022-NKL, 2018 WL 5848994, at \*6 (W.D. Mo. Nov. 7, 2018) (approving $450 per hour rate for attorney with 21 years of experience).

Hourly rates ranging from $330 to $270, depending on experience, are typical for mid-level and junior attorneys such as Ms. Lunden, Ms. Berger, Ms. Howe, and Ms. Salame. *Tidball*, 2020 WL 1666159, at \*13 (finding $200-250 per hour reasonable for attorneys with between 2 and 5 years of experience); *S.C. by and through M.C.*, 2020 WL 5262267, at \*10 (approving an hourly rate of $325 for attorney with 8 years of experience).

The requested hourly rates of $200 for a paralegal with a J.D. and $150 for law student interns are also reasonable; courts in the Western District of Missouri have awarded similar rates in recent cases. *Tidball*, 2020 WL 1666159, at \*13 (finding $150 per hour reasonable for paralegals); *Gerling*, 2022 WL 558083, at \*3 ("A survey of billing rates conducted by Missouri Lawyers Weekly in 2018 shows rates listed for paralegals who work on class action or civil

8

rights cases specifically are between $215 and $275 . . . [therefore the] proposed rate of $250 for each paralegal is reasonable"); *S.C. by and through M.C.*, 2020 WL 5262267, at *9 (approving an hourly rate of $170 for paralegal with 17 years of experience); *Romero v. Smithfield Foods, Inc.*, No. 4:19-CV-00139-BCW, 2021 WL 12311027, at *2 (W.D. Mo. July 13, 2021) ($150 per hour reasonable rate for paralegal in FLSA action).

The hourly rates requested by Stinson attorneys and staff represent their customary billing rates and are a reflection of reasonable hourly rates in the legal market. *See* Ammann Decl. ¶ 18; Chackes Decl. ¶¶ 5-7; Dobson Decl. ¶ 8; Scavotto Decl. at ¶ 5. They do not deviate significantly from the rates requested by NCLEJ and LSEM, or from hourly rates awarded in the cases cited above.

The national economy has seen more than 20 percent inflation over the past 5 years. Likewise, the Kansas City legal market has seen a significant increase in billing rates. John S. Tobey, *The Federal Reserve's Folly: An Inflation Rate Of 20%*, FORBES (March 26, 2024); *compare* Deabler-Meadows Ex. E, *and* Ammann Ex. A (median Kansas City attorney pay increased from $405 per hour in 2019 to $475 per hour in 2023, or a 15 percent increase). These factors support a substantial upward departure from the rates approved for similar actions in recent years. Indeed, courts have held that an increase in hourly rates to keep pace with increases in market rates is appropriate. *See*, *e.g.*, *McKeage v. Bass Pro Outdoor World, L.L.C.*, No. 12-03157-CV-S-GAF, 2018 WL 10648681, at *7 (W.D. Mo. Nov. 8, 2018) (hourly rate of $475 was a reasonable rate for attorney's fees under § 1988 when considering the current rate after payment delays); *Cooper v. Scripps Media, Inc.*, No. 17-0041-CV-W-BP, 2019 WL 2617822, at *9 (W.D. Mo. June 26, 2019) (allowing for an increase from $500 to $600 per hour under § 1988 to account for a year delay in payment). Factoring in such an adjustment, the Western

9

District of Missouri has awarded similar rates to attorneys with comparable experience in civil rights matters and the proposed rates are therefore reasonable.

The first, second, third, fifth, eighth, ninth, and twelfth Johnson factors also support Plaintiffs' requested rates.[3] Plaintiffs' wrongful denial claims were novel, and as described above, this case presented unique challenges. It was litigated for almost four years. Counsel are experienced civil rights litigators who have received recognition from the legal community for their expertise, Deabler-Meadows Decl. ¶¶ 3-9, 60; Deabler-Meadows Ex. D; D'Souza Decl. ¶¶ 2-35; Scavotto Decl. ¶¶ 2-4, 9; Scavotto Ex. 1, 2, 3, and who have demonstrated their competence before this Court. Additionally, as described above, Plaintiffs secured extensive relief that corrects the illegal administration of a statewide program and makes the Plaintiffs fully whole. Finally, Plaintiffs' requested rates are typical of rates awarded for comparable civil rights work in this District, (*see* Ammann Decl.; Chackes Decl.; Dobson Decl.), and Stinson attorneys and staff request their usual hourly rate. Scavotto Decl. ¶¶ 5 Considering the labor required to litigate this case successfully and the scope of relief secured by Plaintiffs, the *Johnson* factors strongly support Plaintiffs' request.

**B. Plaintiffs Seek Fees for a Reasonable Number of Hours and Have Exercised Reasonable Billing Judgment**

Plaintiffs' counsel staffed the case with an eye toward efficiency and cost-effectiveness. More experienced attorneys performed work relating to litigation strategy, arguing motions, and editing briefs. For example, the team's most senior members, Mr. Ferber and Mr. Bass,

---

[3] The twelve factors set forth by the *Johnson* court are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19.

functioned largely in an advisory capacity, providing feedback on drafts, consulting on strategy, and leveraging their experience in preparing for court appearances.[4] Deabler-Meadows Decl. ¶¶ 53; D'Souza Decl. ¶¶ 13, 37. Junior and mid-level attorneys performed tasks such as document review, initial drafting of pleadings, and legal research. Deabler-Meadows Decl. ¶¶ 55; D'Souza Decl. ¶¶ 29, 37. Each office brought unique expertise to the litigation.

Notably, lead counsel on the case, Katharine Deabler-Meadows, is a midlevel attorney with 10 years of experience. Deabler-Meadows Decl. ¶ 51. This minimized the cost of litigation significantly. Ms. Deabler-Meadows has billed the highest number of hours on the case, meaning that a significant number of the hours billed were performed by an attorney with a relatively low hourly rate. Deabler-Meadows Ex. A. LSEM brought in their newest attorney, Ms. Salame, to assist with document review and to communicate with the Plaintiffs' regarding their discovery responses, thus minimizing time spent by more senior attorneys on day-to-day discovery tasks. D'Souza Decl. ¶ 37. Stinson used non-attorney practice support professionals—who are experienced with document collection and review in large, complex lawsuits—to manage ESI, and used associates to review and code ESI. Stinson used Mr. Scavotto to supervise the litigation, but delegated appellate and other issues to Ms. Warr, because she has unique experience that created efficiencies. Scavotto Decl. ¶ 10.

In addition, Plaintiffs have exercised reasonable billing judgment, in line with the Supreme Court's guidance. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (movant in civil rights case must make "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary"); *Hiltibran v. Levy*, No. 10-4185-CV-C-NKL, 2011 WL 5008018, at *2 (W.D. Mo. Oct. 20, 2011) (party seeking fees in civil rights expected to

---

[4] Mr. Ferber also played an enhanced role during mediation, given his longstanding relationship with Empower Missouri and the Missouri Department of Social Services.

exercise "billing judgment"). Here, each office eliminated or reduced billing for certain categories of time, such as press and communications related work and travel. Each office has also reduced or eliminated duplicative billing and billing that did not advance the case, through a combination of zeroing out specific line items, removing billers who made minimal contributions to the litigation, and across the board reductions. Deabler-Meadows Decl. ¶¶ 64-66; D'Souza Decl. ¶¶ 39-40; Scavotto Decl. ¶ 6. Through these strategies, the amount billed has been reduced from $3,427, 272.50 to $2,728,998.30. *See S.C., et al., v. Riverview Gardens Sch. Dist., et al.*, No. 18-4162-CV-C-NKL, 2020 WL 5262267, at \*10 (W.D. Mo, Sept. 3, 2020), *aff'd* 19 F.4th 1078 (8th Cir. 2021) (approving similar billing judgment by LSEM and its cocounsel).

Plaintiffs' supporting declarations from local civil rights attorneys also establish that the number of hours expended are reasonable for a case of this magnitude. *See* Ammann Decl.; Chackes Decl.; Dobson Decl.

### C. Defendant's Tactics Greatly Increased the Number of Hours Plaintiffs Spent on This Litigation.

As discussed above, Defendant prolonged this litigation significantly. Under these circumstances, Defendant should be barred from protesting the number of hours for which Plaintiffs request fees. *Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("[A defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quotation omitted); *Tidball*, 2020 WL 1666159, at \*19 ("Defendants were entitled to vigorously defend themselves, but they cannot now reasonably complain that the hours Plaintiffs expended to counter Defendants' efforts were ill spent."); *McKeage*, 2018 WL 10648681, at \*4 ("Because of the vigorous contention of this case by Defendant, Plaintiffs necessarily were required to spend a great amount of time responding to Defendant's arguments."); *Coral Grp., Inc. v. Shell Oil Co.*, No. 4:05-CV-0633-DGK, 2013 WL 4067625, at

*5 (W.D. Mo. Aug. 12, 2013) ("[I]t is well-established that where one party, in this case the Plaintiffs, litigates tenaciously, they cannot complain about the time spent by the other party.").

## III.   PLAINTIFFS' SUCCESS JUSTIFIES A FULLY COMPENSATORY FEE AWARD

A plaintiff who succeeds in curing a civil rights violation serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (per curiam). Fee shifting in such cases ensures plaintiffs are reimbursed for the costs of litigation, while also holding "to account 'a violator of federal law.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978)).

A fully compensatory fee award is appropriate where plaintiffs have prevailed on every claim. *Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."); *Jenkins ex rel. Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (citing *Hensley*, 461 U.S. at 435) ("[i]f the plaintiff has won excellent results, he is entitled to a fully compensatory fee award."). Here, Plaintiffs are the prevailing parties and obtained excellent, impactful results. A fully compensatory fee award is appropriate.

## IV.   PLAINTIFFS SEEK REASONABLE COSTS

The Federal Rules of Civil Procedure state that unless provided otherwise, "costs—other than attorney's fees—should be allowed to the prevailing party." F.R.C.P. 54. Plaintiffs are entitled to reimbursement for "[r]easonable expenses of the kind a law firm would ordinarily bill to its client." *Barrett v. Claycomb*, No. 11-CV-4242-NKL, 2013 WL 6920860, at *4 (W.D. Mo. Dec. 9, 2013); *Washington v. Denney*, No. 2:24-cv-06118-NKL, 2017 WL 4399566, at *7 (W.D.

13

Mo. Oct. 3, 2017) (holding "prevailing party in a § 1983 action is entitled to an award reimbursing reasonable expenses of the kind normally charged to clients by attorneys," and awarding costs of travel, meals and court reporter fees as part of fee award under § 1988). Such costs are distinguished from non-recoverable "expenses that are part of normal office overhead in the community" such as postage and time spent itemizing billing statements. *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001).

Here, Plaintiffs have eliminated categories of costs that would otherwise be recoverable. For example, Plaintiffs are not seeking costs incurred by LSEM related to travel of less than 10 miles to meet with clients or declarants, or overnight stays in Jefferson City prior to hearings. D'Souza Decl. at ¶ 49. Plaintiffs seek recovery for $4,784.09 in non-taxable costs, and $20,214.05 in the verified bill of costs. *See* Deabler-Meadows Decl. ¶ 75; Deabler-Meadows Ex. F; D'Souza Ex. N; Pls' Bill of Costs.

## CONCLUSION

Plaintiffs are the prevailing parties and an award of fees under 42 U.S.C. § 1988 is therefore appropriate. There is a strong presumption that the Plaintiffs' proposed lodestar amount—based on a reasonable rate multiplied by a reasonable number of hours—represents a reasonable fee. Plaintiffs have already exercised substantial billing judgment to remove $698,274.20 from their fee request. Therefore, Plaintiffs respectfully request that this Court award fees and costs as requested.

Dated: July 7, 2025
      St. Louis, Missouri

                             Respectfully submitted,

                             */s/ Lisa J. D'Souza*

                             Katherine A. Holley, #71939
                             Jamie Rodriguez, # 64323

14

Lisa J. D'Souza, # 65515
Legal Services of Eastern Missouri
701 Market St., Suite 1100
St. Louis, Missouri 63101
(314) 534-4200
kaholley@lsem.org
jlrodriguez@lsem.org
ljdsouza@lsem.org

Katharine Deabler-Meadows, *admitted pro hac vice*
Saima Akhtar, *admitted pro hac vice*
National Center for Law and
Economic Justice
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967
deabler@nclej.org
akhtar@nclej.org

Andrew J. Scavotto, #57826
J. Nicci Warr, #59975
Zachary T. Buchheit, #71816
Stinson LLP
7700 Forsyth Blvd, Suite 1100
Clayton, MO 63105
(314) 863-8600
andrew.scavotto@stinson.com
nicci.warr@stinson.com
zachary.buchheit@stinson.com

*Counsel for the Plaintiffs*

15