# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

| | |
|---|---|
| MARY HOLMES, *et al.*,<br><br>               Plaintiffs,<br><br>           *v.*<br><br>JESSICA BAX, in her official capacity as Director of the Missouri Department of Social Services,<br><br>               Defendant. | Case No. 2:22-cv-04026-MDH |

## STATUS REPORT ON COMPLIANCE
## WITH MAY 6, 2025 ORDER

On May 6, 2025, the court issued an order requiring Defendant to achieve two benchmarks related to call wait times for SNAP applicants and the number of SNAP applications rejected for failure to complete the interview requirement. *See* Dkt. 220. "To assist in facilitating progress toward these benchmarks," the court also ordered Defendant to undertake 26 specific actions, including 23 programmatic steps and three sets of required periodic reports. *Id.* at 6–11. The court further informed Defendant that it expected the Missouri Department of Social Services (DSS) to "make substantial progress toward these benchmarks within 6 months of this Order." *Id.* at 6.

In accordance with the May 6th Order, Defendant continues to file monthly status reports on call center metrics, which, per the court's order, have also been provided to numerous state legislators and the Governor's office. The most recent

1

report, Dkt. 242 and 242-1, includes data for each of the eight months since this court issued its May 6th Order (June 2025–January 2026).

Defendant hereby provides the following update on progress by DSS toward achieving the court's two benchmarks and implementing the 23 programmatic requirements and three reporting requirements set forth in the May 6th Order.

## I.    Benchmarks

The May 6th Order requires Defendant to take any steps necessary to achieve the following benchmarks:

- "[R]educe the average wait time for Tier 1 and Tier 3 callers so that 90% of callers have no more than a 20 minute wait time"; and

- "[B]ring the number of applications which are rejected for failure to interview to no more than 20% of all applications."

Dkt. 220, at 5–6.

**Update:** For the first benchmark, the average wait time for Tier 1 and 3 callers has decreased substantially since May 2025, and DSS achieved average wait times below 20 minutes for both tiers in November and December 2025 and January 2026. Tier 1 callers (those calling into the general line for SNAP, Medicaid, and Temporary Assistance for Needy Families cases) experienced an average wait time of 15 minutes in November 2025, 16 minutes in December 2025, and 17 minutes in January 2026. Dkt. 242-1, at 1. Tier 3 callers (those calling in for SNAP interviews) experienced average wait times of 14 minutes for both November and December 2025 and a 16-minute average wait time for January 2026. *Id.* In December 2025 and January 2026, approximately 65% of Tier 1 callers and 67% of Tier 3 callers waited no more than 20 minutes. *Id.*

2

DSS has met the second benchmark each month since May 2025. SNAP applications rejected solely for failure to complete an interview have accounted for 15% or less of all applications each month since May 2025, and accounted for only 6% of all SNAP applications in January 2026.[1] *Id.*

## II. Additional Required Actions

"To assist in facilitating progress toward these benchmarks," the court also ordered Defendant to implement 23 programmatic steps and three sets of reporting requirements. Dkt. 220, at 6–11. Defendant now updates the court on these separate requirements as follows:

### A. SNAP Right to File

1. Defendant shall continue to provide an option to complete and submit a SNAP application online and to complete and submit a SNAP application on a mobile device.

   **Update:** This option has been provided since March 2022.

2. Defendant shall allow individuals to request via phone that a paper application be sent to them via U.S. mail. Defendant shall implement an automated Interactive Voice Response system ("IVR") menu option, through which individuals can request a paper application be mailed to them without speaking to a DSS worker, and without waiting on hold at any point (either before or while making the paper application request).

   **Update:** Implemented October 2024.

---

[1] Some SNAP applications are rejected for multiple reasons, so DSS has reported two metrics for this benchmark: the number of all SNAP rejections that mention failure to complete an interview, and the subset of these cases that were rejected *solely* for failure to complete an interview (this subset is also counted in the first number). For each month since May 2025, less than 20% of all SNAP applications were rejected for failure to complete an interview, including cases in which failure to interview was listed with at least one other reason for rejection, and this metric fell to only 8% of SNAP applications in January 2026. *Id.*

3. Defendant shall make the IVR option discussed in paragraph 2 available to all callers, without the requirement to enter a Social Security Number or Department Case Number ("DCN") until after the menu option has been selected.

   **Update:** Implemented October 2024.

4. Defendant shall ensure that the IVR option discussed in paragraph 2 informs callers they may apply for SNAP online, and provides the website address for the online SNAP application.

   **Update:** The IVR has included the information for applying online since 2021.

5. Defendant shall allow individuals to request online that a paper application be sent to them via U.S. mail. Defendant shall develop an online request form for this purpose. Defendant shall make the online request form available on Defendant's website.

   **Update:** Implemented February 23, 2026.

6. Defendant shall promptly mail all requested paper SNAP application forms.

   **Update:** Implemented.  DSS began reporting mailout times to the court in June 2025, with nearly all requested application forms mailed within 1 business day of the request.  Now that an online request form is available, DSS will begin reporting online paper application request data monthly, beginning with the April 2026 SNAP Judgment Report.

## B.     Wrongful Denials

7. Defendant shall not deny applications for failure to interview when the applicant has made reasonable attempts to complete their interview between the filing of the SNAP application and the relevant processing deadline. For the purposes of this Order, "reasonable attempts to interview" means that an applicant:

   a. Has called into the Tier 3 Inbound Line on more than one occasion, and was deflected; or

   b. Has called into the Tier 3 Inbound Line on two occasions, and entered the Tier 3 Inbound Queue on those two occasions and has been on hold for more than 15 minutes each time; or

4

c. Has visited a Resource Center, and had the visit logged in Current after submitting a SNAP application but before completing an interview; or

d. Has scheduled an interview appointment, either face-to-face or telephonic.

**Update:** As explained in more detail in Section III of this report, Defendant has not been able to implement this item due to technical barriers and resource limitations, but is nonetheless meeting the benchmark established by the court regarding denials for failure to interview.

8. Defendant shall place at least one outbound call to attempt to interview each SNAP applicant household not entitled to expedited processing.

**Update:** This has been DSS practice since June 2017 and is an automated process. The only reasons an applicant may not receive a call is if they did not provide a phone number, there was an error in entering their phone number, or their phone could not accept the call for technical reasons, e.g., exhausted minutes or call-blocking, or because an interview is not required pursuant to a waiver like the Elderly & Disabled Waiver. Ex. 1, Comer Decl. ¶ 3.

9. Defendant shall place at least two outbound calls to attempt to interview each SNAP application household that screens eligibility for expedited processing.

**Update:** This has been DSS practice since January 2023.

10. Prior to placing outbound interview calls, Defendant shall send a text message to the phone number on the SNAP application notifying the applicant that a SNAP eligibility worker will be contacting them within the next day, and encouraging the applicant to answer the call and complete their SNAP interview.

**Update:** This has been DSS practice since February 2021.

11. Defendant shall inform SNAP applicants who apply in person at Resource Centers that they have the option to interview on the same day they submit their application.

5

**Update:** Implemented. This has been established in policy and was an expected FSD business practice prior to issuance of the court's May 6th order. *See* Ex. 4 ("Face-to-face interviews must be completed or scheduled upon request"). Defendant is aware that this policy was not applied consistently in some locations when Resource Centers closed to in-person business during the COVID-19 pandemic and for a time thereafter when Resource Centers adjusted to resume in-person operations. However, Defendant believes the policy is applied consistently as of the date of this filing. *See* Ex. 1, Comer Decl. ¶¶ 10–13.

12. When an applicant makes a request in person at a Resource Center for a face-to-face interview, Defendant shall follow the following procedures:

    a. Provide the applicant with a face-to-face interview on the same day of their request, except when staff availability does not allow.

    b. If staff availability does not allow for a face-to-face interview the same day as the request, provide the applicant with an appointment for a face-to-face interview scheduled within the following five days.

    c. If staff availability does not allow for a face-to-face interview the same day as the request and the applicant cannot return to the Resource Center within the next five days, provide the applicant with a face-to-face interview appointment at a date and time convenient to the applicant, and within 30 days of the date of their application.

    d. Defendant shall only divert an applicant who has requested a face-to-face appointment to a telephone interview appointment—whether in the Resource Center or via a telephone—with the applicant's consent.

**Update:** Implemented. This provision and subparts reflect expected FSD business practice prior to issuance of the May 6th Order. *See* Ex. 1, Comer Decl. ¶¶ 10–13. Defendant is aware that this policy was not applied consistently in some locations when Resource Centers closed to in-person business during the COVID-19 pandemic and for a time thereafter when Resource Centers adjusted to resumed in-

person operations.  However, Defendant believes the policy is applied consistently as of the date of this filing.  *See id.*

13. Defendant shall send a notice to applicants within one business day of the submission of a SNAP application informing them of the interview requirement and the ways in which an interview can be completed. This notice should also inform applicants to expect the Predictive Dialer call.

**Update:** Implemented as part of the SNAP application (FS-1) as of September 10, 2025, and through new wording on the interview requirement notice (FA-334) as of October 12, 2025.  *See* Ex. 5, at 1, 2; Ex. 6, at 1.  Because a notice sent out after an application is submitted is unlikely to reach the applicant before a predictive dialer call is made, DSS, in addition to modifying the interview requirement notice sent out after an application is received, also created cover pages for the SNAP application that contain the following information:

> You have the right to apply for SNAP benefits at any time.
>
> If an interview is required, it can be completed by phone or in person. An interview is required in most cases.
>
> **Family Support Division (FSD) will attempt to call you, if you provided a phone number on the application, the next business day after your application is registered to complete an interview. Answering this phone call is the quickest way to complete your interview.**
>
> If you did not provide a phone number, or if you are unable to complete your interview at the time we call, please call (855) 823-4908 to complete your interview or visit an FSD office to complete this as soon as possible.
>
> . . .
>
> If an interview is required, it can be completed:
>
>> by calling: **(855) 823-4908**
>>
>> in person: visit **dss.mo.gov/offices.htm** to find a resource center for you

Ex. 5, at 1, 2.

14. Defendant shall send a notice five days after the submission of a SNAP application, if the applicant has not completed an interview by that date. This notice shall remind the applicant of the various ways in which an interview can be completed, including the option to have a face-to-face interview at a Resource Center, and the option to schedule a telephone or face-to-face interview.

**Update:** Implemented as of October 12, 2025. DSS provides this information through a notice titled "FINAL NOTICE – INTERVIEW REQUIRED," (FA-335), which is sent to SNAP applicants five days after application submission if they have not completed an interview by that day. *See* Ex. 7. This form was revised to clearly inform applicants of the options to complete interviews by telephone or in person, and how to schedule an appointment for their interview, including instructions for scheduling an appointment through the online chat feature. *See id.*

15. Defendant shall offer callers to the Tier 3 Inbound Line the opportunity to schedule a telephone or face-to-face interview:

   a. When they reach the Tier 3 Inbound Queue;

   b. When they are deflected or redirected from the Tier 3 Inbound Queue; and

   c. When they have waited on hold for more than twenty minutes.

**Update:** This has been DSS practice since August 1, 2024, except for offering the opportunity to schedule an interview for those who have been on hold for more than 20 minutes. FSD is working on adding the option to schedule an appointment at approximately the 20 minute hold time on the Tier 3 Inbound Queue and anticipates an implementation date of April 1, 2026.

16. Defendant shall schedule interview appointments for applicants prior to the thirtieth day after their application was submitted. If an appointment prior to the thirtieth day is not available, then Defendant shall give the applicant the soonest available appointment.

8

**Update:** Implemented. DSS has been providing the court a SNAP Appointment Requests Report since June 2025, which shows nearly all interviews are scheduled before the processing deadline. *See, e.g.*, Dkt. 242-1, at 4.

17. When an applicant has an interview scheduled for more than thirty days after their application was submitted, Defendant shall not deny the application for failure to interview prior to the scheduled appointment. As an eligibility determination cannot be made until after the interview is completed, Defendant may encourage applicants with scheduled interviews to continue to try other methods of completing an interview.

   **Update:** As explained in more detail in Section III of this report, Defendant has not been able to implement this item due to technical barriers and resource limitations, but is nonetheless meeting the benchmark established by the court regarding denials for failure to interview.

18. Defendant shall allow applicants who complete interviews sufficient time, not less than 10 calendar days after their interview, to submit any verifications, as required by 7 C.F.R. § 273.2(f). Defendant shall comply with this provision even when the interview is completed after the processing deadline.

   **Update:** Implemented. FSD Income Maintenance Manual section 8.5.3 states: "Applications are not rejected until the application due date, or the due date on the Request for Information, whichever is later." Ex. 8, subheading "SNAP Application Rejections."

19. Defendant shall ensure SNAP notices sent to applicants who have not completed an interview, including notices sent related to SNAP recertifications, clearly inform SNAP applicants that they can complete an interview by:

   a. Answering calls from Defendant placed within three days of application submission and/or sixteen days after application submission;

   b. Calling the Call Center during business hours;

   c. Going to their local Resource Center during the Resource Center's business hours; and

d. Scheduling a phone interview by calling into the Call Center and selecting the appropriate menu option or using the online scheduler.

**Update:** Implemented as of October 12, 2025. DSS currently provides the following notices: "Interview Required to Process Your Application" (FA-334); "Final Notice – Interview Required" (FA-335); and "Notice of Expiration Letter" (FA-520) to provide this information. *See* Ex. 6; Ex. 7; Ex. 9. The FA-520 notice instructs participants to reapply and is specific to recertification. *See* Ex. 9.

20. Defendant shall conduct ongoing efforts to recruit, train, and retain staff, to ensure Defendant employs sufficient staff to provide meaningful access to SNAP interviews, and to meet other agency obligations.

**Update:** Implemented. DSS staff recruitment efforts are ongoing. *See* Ex. 3, Robison Decl. ¶¶ 3–9.

21. On a quarterly basis, Defendant shall assess the number of Call Center staff needed to achieve the Performance Metrics described in this Order, and shall take all practicable steps to assign such staff to the Tier 3 Inbound Queue and the Tier 3 Outbound Queue.

**Update:** Implemented. DSS has a continuous process to assign staff to meet the court's reporting metrics, as set forth as part of Defendant's monthly SNAP Judgment Reports, in the section titled "Changes in SNAP Administration to Address Benchmarks Report." *See*, *e.g.*, Dkt. 242-1, at 5.

### C. Americans with Disabilities Act

22. Within 60 days Defendant shall develop an ADA Policy that ensures the SNAP program is administered in compliance with the ADA.

**Update:** Implemented.

23. Defendant shall submit a copy of the ADA policy to Plaintiffs and the Court.

**Update:** Defendant filed its updated policy with the court on July 7, 2025. *See*

Dkt. 228-1.

### D. Data and Reporting

24. For the duration of the Court's jurisdiction over this action, Defendant shall comply with all monthly reporting obligations required by the Court's prior Order, Doc. 161.

**Update:** Implemented.  DSS has been filing monthly SNAP Judgment Report

on the 15th or immediately following business day of each month showing all

available data. *See*, *e.g.*, Dkt. 242-1.

25. Defendant shall provide the Court with a monthly Paper Applications Request Report, which shall include:

    a. The total number of paper SNAP applications requested in the previous month, broken down by means of request; and

    b. The total number of paper SNAP applications mailed more than one business day of the request and those mailed more than a week after the request in the previous month, broken down by means of request.

**Update:** Implemented.  DSS began reporting mailout times in June 2025,

showing that nearly all paper applications are mailed within one business day of the

request each month.  Dkt. 242-1, at 3.  DSS will soon report the online request mailout

times since this functionality started February 23, 2026.

26. Defendant shall provide the Court with a monthly Interview Request Report, which shall include:

    a. The total number of interviews requested via the appointment scheduler; and

    b. The number of appointment requests that were not scheduled for a date before the relevant processing deadline.

**Update:** Implemented. DSS has provided the court with a monthly SNAP Appointment Requests Report since June 2025, which shows nearly all appointments are scheduled for a date before the processing deadline. Dkt. 242-1, at 4.

### III. Further Discussion of Items 7 and 17 of the May 6 Order

As stated above, Defendant has not implemented Items 7 and 17 of the May 6th Order, both of which would require extensive additional resources that would impact ongoing operations, would benefit a very small number (less than 1%) of SNAP applicants, and neither of which is necessary to achieve the benchmarks established by the court in its May 6th Order.

In order to implement these provisions, DSS would have to hire or reassign specialized staff to perform burdensome, after-hours work *each night* to manually identify SNAP applicants with pending applications who meet one of the criteria listed in Item 7 or scheduling criterion in Item 17. *See* Ex. 2, Richardson Decl. ¶¶ 12–13; Ex. 1, Comer Decl. ¶ 15. The process of identifying these applicants would require data pulls and several rounds of data analysis and matching to make it compatible across four IT systems every evening, which would have to be performed manually by a staff member at the Research Data Analyst level. Ex. 2, Richardson Decl. ¶¶ 12–14 Because of the need to pull information from incompatible systems, this process cannot be automated. *See id.* ¶ 5.

Once these individuals are identified, staff would then have to manually suspend denials for those applicants. *See* Ex. 1, Comer Decl. ¶¶ 14. Defendant estimates that this would require two to four full-time Benefit Program Technicians

to manually suspend the listed denials each day and subsequently process those applications by hand once a final eligibility determination had been made. *Id.*

Although Defendant has not been able to implement these two items, the data indicates that the impact of not doing so is minimal. A DSS analysis of data from January 2026 indicates that less than 1% of individuals with open applications that month met criteria to have their applications held open pursuant to Item 7 of the May 6th Order. *See* Ex. 2, Richardson Decl. ¶¶ 8–10. As for Item 17, data from January 2026 demonstrates that only 14 telephone appointments were scheduled beyond the application processing deadline for that month. Dkt. 242-1, at 4. The Automated IVR and Chat clearly advise that an applicant "must make sure your appointment is scheduled before that due date;" that "[i]f you cannot schedule an appointment before that date, you will need to visit your local resource center or call us back before your deadline;" and that "[y]ou do not need an appointment to visit your local resource center." Ex. 1, Comer Decl. ¶ 8. In-person appointments scheduled at any of the FSD resource centers do not fill up each day and are generally available the same day: all FSD resource centers had available in-person appointments every business day in January 2026, with same day appointments available each day during a review period of January 28, 2026 through February 18, 2026. *Id.* ¶ 6.

Moreover, as explained above, Defendant achieved the benchmarks established by the court with respect to the percentage of denials for failure to interview without implementing these two items.

Finally, were the Department to implement Items 7 and 17, holding applications open beyond the 30-day processing timeframe would adversely impact the Department's application processing timeliness (APT) rate, which is closely monitored by the U.S. Food & Nutrition Service. Sustained sub-standard performance on APT rates puts the Department at risk of a reduction in federal funding, 7 C.F.R. § 276.4, which would negatively impact the program for all SNAP recipients.

Defendant recognizes that the court does not have the jurisdiction to modify its order in light of the ongoing appeal to the Eighth Circuit (Case No. 25-1987). *See Griggs v. Provident Consumer Co.*, 459 U.S. 56, 58 (1982); *United States v. Ledbetter*, 882 F.2d 1345, 1347 (8th Cir. 1989). However, should the judgment and order be upheld on appeal, Defendant intends to ask the court to amend its order to eliminate these two items, for the reasons stated above.

Respectfully submitted,

/s/ Caroline M. Brown
Caroline M. Brown, *pro hac vice*
D.C. Bar No. 438342
Rebecca L. Wolfe, *pro hac vice*
D.C. Bar No. 90005765
Brown & Peisch PLLC
1225 19th Street NW, Ste 700
Washington, D.C. 20036
Phone: (202) 499-4258
cbrown@brownandpeisch.com
rwolfe@brownandpeisch.com

/s/ Sharie L. Hahn
Sharie L. Hahn, #59748
General Counsel
Missouri Dep't of Social Services

14

221 W. High Street
P. O. Box 1527
Jefferson City, MO 65102
Phone: (573) 508-9489
sharie.l.hahn@dss.mo.gov


*Attorneys for Defendant*

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was forwarded to all attorneys of record via the Court's electronic filing system this 5th day of March, 2026.

<u>/s/ Caroline M. Brown</u>
Caroline M. Brown